[Crim. No. 3654. Second Dist., Div. One. Jan. 29, 1943.]

THE PEOPLE, Respondent, v. HENRY N. BUSH, Appellant.

Gladys Towles Root for Appellant.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

YORK, P. J.—Appellant was charged by an information with a violation of section 288 of the Penal Code and appeals from the judgment of conviction of the offense as charged, the grounds of said appeal being as follows:

1. Alleged error in certain instructions;
2. Alleged error in admission of evidence;
3. Insufficiency of the evidence to support the verdict and judgment.

The record reveals that the victim was a little girl six years of age, who lived with her mother and a brother nine years of age, in a one-room apartment at Wilmington, California. On the night of May 22, 1942, the mother, who sold cosmetics and novelties, went out to make a delivery of merchandise to a cafe a block or two away from the apartment, leaving the little girl alone in bed. The mother had been away about twenty minutes when a Mr. Anderson, another tenant living in an adjoining apartment, entered the cafe and told the mother her little girl was crying. The mother immediately returned home and finding the child in a pitiable condition bleeding from the vagina and the external genitalia, took her to an emergency hospital. Because of the critical condition of the child she was shortly thereafter taken to the General Hospital where she remained about three weeks undergoing treatment for her injuries.

It appears from the record that the dwelling in which the child and her family resided had formerly been a grocery store which had been converted into three small apartments, one of which was occupied by Mr. Evald Anderson. Mr. Anderson testified that when he returned home that night he heard the little girl screaming or crying loudly; that he went to her apartment and about five steps outside thereof, he passed appellant who "was coming the other way, leaving . . . I saw him come out the door . . . When I came in there the child was at—she was in the dark, she kept on crying, I asked her what she was crying for . . . She said Hank (appellant) done something nasty to her . . . when I put on the light, no need telling me what had happened to her, blood was running down the leg, down the toes, trickled down to the floor. . . . I tried as fast as I could to get her mother, and get her to the hospital. . . . I called a man, a friend of mine living in the next apartment, to come out until I could run by her mother to get her to come home"; that he spoke to appellant and told him to stop, but the latter "just beat it . . . walking plenty fast." This witness also testified that after he turned on the light in the child's room, he saw appellant looking in a window of the room, at which time he distinctly saw appellant's face, and again told him, "You wait a minute there, I want to see you."

Dr. Paula Horn testified that she examined the little girl the next morning at the General Hospital, it being necessary to give her an anaesthetic. Said witness described the vic-

tim's injuries and testified that she was a specialist in obstetrics and gynecology and gave as her opinion that the injury she observed on the little girl was such as might have been caused by the insertion of a male organ.

Police Officer Ledbetter testified he was present when appellant was brought to the General Hospital into the presence of the child, at which time she pointed to appellant and said: "This is the man that hurt me," and described where she had been injured. Appellant at that time admitted in the presence of the officers that everything the little girl said was true.

The child took the stand at the trial and testified that she was six years old; that she knew appellant as "Hank"; that she remembered the night when she was in bed alone and appellant got in bed with her and hurt her in her privates; that appellant stated to her that her mother had asked him to take care of her (the little girl). The court asked her: ". . . What did Hank hurt you with"? to which she replied: "His finger."

A full confession made by appellant was read to the jury in which he admitted all of the circumstances of the offense and admitted that he raped the child. He took the stand in his own defense, admitted he knew the little girl and her mother; stated that he spent the evening drinking with two friends; that he did not know what time he went home, but recalled he went by the house where the little girl lived and saw a crowd of four or five fellows around the place; that he started to go over there but changed his mind and walked on. Also, he denied he was in the apartment where the little girl lived that night.

▆ Appellant complains of a number of instructions given by the trial court on the subject of intent, but has neglected to recite in his brief all of the instructions given on that subject. However, his principal objection appears to be that there is some ambiguity regarding intent when the information and the instructions are read together and that the jury was thereby misled.

The information first charges a violation of section 288 of the Penal Code and then charges that appellant "did have and accomplish an act of sexual intercourse with and upon the said . . . a female person . . . of the age of six years . . . with intent then and there of arousing, appealing to and gratifying the lusts, passions and sexual desires of the said . . . and Henry N. Bush."

The trial court gave full and complete instructions on the subject of the required intent under a charge of violation of section 288 of the Penal Code. The evidence of the child was that appellant fondled her, while the statement and confession of appellant were that he raped her. The intent under section 288, *supra*, is to arouse the lusts and passions by lewd and lascivious acts, and the fact that the act was one of intercourse does not alter the intent in question. The fact that appellant may also have been guilty of an additional offense, that of statutory rape, is of no consequence. (*People v. Agullana*, 4 Cal.App.2d 34, 37 [40 P.2d 848].) In the light of the record, considering both the evidence and the full and complete set of instructions given, it is impossible to say that the jury was misled in any way.

Appellant urges that "in view of the evidence given by Phyllis Doganiere, who testified as a witness for the People, and that given by appellant herein that he was at no time" at the home of the child victim on the 22nd day of May, 1942, but was in the Star Cafe, it was prejudicial error to give the following instructions:

1. "The Court instructs you that the commission of a criminal offense necessarily requires the presence of the defendant at the necessary time and place. Proof of an alibi is therefore as much a traverse or complete answer to the crime charged as any other defense and proof tending to establish an alibi may raise enough doubt to produce an acquittal. A reasonable doubt of the defendant's presence at the time and place necessary for the commission of the crime must necessarily raise a reasonable doubt of his commission of it. The defendant is entitled to the benefit of that reasonable doubt in your mind that the defendant was present at the time and place alleged in the information, and if such reasonable doubt exists in your mind, you must acquit the defendant."

2. "The Court instructs the jury that it is wholly immaterial on what day or night the offense charged in the information was committed, provided you believe from the evidence it was committed, and that the same was committed within three years prior to the filing of the information in this case."

Appellant was the only witness for the defense. He denied that he visited the home of the child victim on the night of May 22, 1942, and testified that he spent the entire eve-

ning drinking with friends at the Star Cafe; that he had no idea what time he left there for his home, but that on his way home he saw a crowd of people around the house where the little girl lived and started to go over there, but changed his mind.

The information alleged that the offense charged was committed on May 22, 1942 without fixing the exact hour. The prosecution produced evidence tending to prove that the offense was committed just shortly before midnight on the stated day. After the appellant rested his case, the prosecution presented Phyllis Doganiere as a rebuttal witness and she testified that she was the night cashier at the Star Cafe on the night in question; that she went on the night shift at 11:00; that appellant was involved in a fight in said cafe between 11:00 and 11:30 that night and that it was after 12:00 midnight when he left there.

Appellant cites in support of this contention the case of *People* v. *Waits*, 18 Cal.App.2d 20, 21 [62 P.2d 1054], in which it was held that an instruction identical with instruction No. 2, above quoted, was erroneous as to the defense of alibi. In the cited case appellant relied upon an alibi and produced testimony establishing it. It was there stated : ''In light of defendant's alibi defense, the time the alleged offenses were committed became material, and it was the duty of the trial court to limit the jury in its consideration of the evidence to the period which the prosecution selected as the time of the commission of the offenses.''

In the instant case the prosecution's witnesses first fixed the hour as shortly before midnight and then fixed the hour as after midnight. Appellant denied that he committed the crime or that he was in the victim's home on the night the offense was committed. Consequently, it cannot be said that the conflict in the testimony produced by the prosecution was sufficient to establish an alibi on behalf of appellant. Under the facts and circumstances here presented, the giving of the two instructions complained of did not constitute reversible error.

■ Appellant complains of error in the admission over his objection of the following testimony of the witness Anderson, who was the first person to go to the assistance of the little girl:

''A. Yes; when I came there the child was at—she was in

the dark, she kept on crying, I asked her what she was crying for.

"Q. What did she say?

"A. She said Hank done something nasty to her."

This statement was made by the child to the witness Anderson "inside of a minute or two" of the time said Anderson had passed appellant as the latter emerged from the child's apartment. Such statement was made so near the time of the attack upon the little girl as to make it a part of that occurrence.

Section 1850 of the Code of Civil Procedure recognizes the competency of certain hearsay evidence as an exception to the general rule excluding that class of proof: "Where, also, the declaration . . . forms a part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration . . . is evidence, as part of the transaction."

■ A declaration or act to be admissible under the rule enunciated by section 1850, *supra*, "must be an undesigned part, or incident, of the occurrence in question, and illustrative of its character. It must be, in a general sense, contemporaneous with the main occurrence, although, in case of a sudden accident or attack, the declaration would not be inadmissible merely because the occurrence immediately preceded it. It must be the natural and spontaneous outgrowth of the main occurrence, and must exclude the notion of deliberation or the design to manufacture evidence." (10 Cal.Jur. 1112, § 340.)

"Owing to the varying phases of human affairs, it is not possible to lay down a rule which will determine what is the res gestae in every case, and each case must be determined upon its own peculiar facts. (*People* v. *Wong Ark,* 96 Cal. 125 [30 P. 1115]; *People* v. *Blake,* 129 Cal.App. 196, 202 [18 P.2d 399].)" (8 Cal.Jur. 93, § 190.)

"The res gestae embraces not only the actual fact of the transaction and the circumstances surrounding it, but the matters immediately antecedent to and having a direct causal connection with it, as well as acts immediately following it and so closely connected with it as to form in reality a part of the occurrence." (8 Cal.Jur. 96, § 193, and authorities there cited.)

The admissibility of the statement to which objection was directed was a matter addressed to the sound discretion of the trial court, and in the circumstances here presented, we

are not prepared to say that the court in admitting the statement referred to committed an abuse of discretion.

█ Finally appellant complains that the evidence adduced at the trial is insufficient to support the judgment of conviction because of alleged weakness in the victim's testimony and also because appellant's confession was not free and voluntary.

A complete answer to these complaints is the fact that the evidence is legally sufficient in all respects to sustain appellant's guilt without either the testimony of the child or appellant's confession. As to the confession, the evidence was conflicting as to its free and voluntary character. The jury resolved such conflict against appellant.

The testimony of Mr. Anderson, who answered the child's screams and observed appellant leave the house while the victim was inside alone crying, and who, after turning on the lights, saw appellant come to the window and look into the room—is sufficient when coupled with other evidence, particularly that of the mother of the child regarding her brief absence from home, to establish the corpus delicti beyond a reasonable doubt.

An examination of the entire record shows that there was no miscarriage of justice in this case and that the trial was properly and fairly conducted. The evidence taken as a whole, including as it does appellant's admission of wrongdoing, clearly establishes appellant's guilt.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 25, 1943. Curtis, J., Carter, J., and Schauer, J., voted for a hearing.