527 P.2d 285
**STATE of Arizona, Appellee,**

v.

**Richard Allison KEVIL, Appellant.**

**No. 2891.**

Supreme Court of Arizona,
In Banc.
Oct. 17, 1974.

Gary K. Nelson, Former Atty. Gen., N. Warner Lee, Atty. Gen., Stanley L. Patchell, Asst. Atty. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender, Charles J. Babbitt, Asst. Public Defender, Susan E. Connors, Third Year Law Student, University of Arizona, Tucson, for appellant.

LOCKWOOD, Justice:

Richard Kevil and Davida Kevil, the defendants in this case, were found guilty following a jury trial of robbery in violation of A.R.S. §§ 13–641 and 13–643. Richard Kevil was sentenced to serve a term of from five to seven years in the Arizona State Prison. His wife, Davida Kevil received a sentence of five years probation. Defendant Richard Kevil now appeals his conviction on several grounds.

The record reveals that at approximately 4:00 p. m. on November 12, 1973, Mr. Loren Lashbrook was dropped off in downtown Tucson so that he could catch a bus to a veteran's hospital in California. After buying his ticket Mr. Lashbrook proceeded to patronize several bars in the area. Between 9:00 and 9:30 p. m. that evening he met Davida Kevil in Pete's Lounge. After several minutes of conversation he suggested that they go to her apartment for a drink. She indicated her approval, but then excused herself for a moment and went to talk to another man at the other end of the bar, who Mr. Lashbrook later testified bore some resemblance to Mr. Kevil. This behavior made Mr. Lashbrook somewhat apprehensive, and he left Pete's Lounge and went to the Roman Inn where he stayed approximately ten or fifteen minutes before returning to Pete's Lounge.

Upon returning he was approached by Mrs. Kevil. Shortly thereafter they left the bar together and proceeded towards her apartment. While walking through an alley a man accosted Mr. Lashbrook and stole his wallet. After the robbery Mr. Lashbrook ran down the alley in the direction which his assailant had fled. When he reached

the corner he saw a police car containing Officers Miller and Martin, whereupon he informed them of what had taken place in the alley. Mr. Lashbrook got in the back seat of the patrol car and they drove into the alley. After the headlights illuminated Mrs. Kevil standing in the alley Mr. Lashbrook immediately exclaimed "that's her, that's her. That is the one who set me up."

After initially stating she was in the alley because she enjoyed listening to barking dogs, Mrs. Kevil eventually admitted she had been accompanying Mr. Lashbrook at the time of the robbery. After Mrs. Kevil was placed under arrest the victim related to the officers the series of events leading up to the robbery, whereupon it was decided to proceed to the Kevil's apartment. Mr. Lashbrook identified Richard Kevil at the apartment as his assailant. Mr. Lashbrook's wallet was found in the Kevil apartment and eight crumpled one dollar bills, the amount Mr. Lashbrook stated had been stolen, were retrieved from one of Mr. Kevil's pockets.

At the trial Mr. Lashbrook identified Richard Kevil as his assailant, but was unable to recall several things, including a positive recollection of Mrs. Kevil as the woman he encountered that evening. Mrs. Kevil testified that she had met Mr. Lashbrook in Pete's Lounge that evening but that her husband was not the man who robbed Mr. Lashbrook in the alley. The defense sought to impeach Mr. Lashbrook because of his memory difficulties caused by a mental condition for which he had been hospitalized in the past. After hearing all the evidence, the defendants were found guilty of robbery by the jury. Defendants' motion for a new trial based upon numerous grounds was denied. Defendant Richard Kevil then filed a timely appeal to this court.

It is defendant's first contention that the denial of defense counsel's motion to disclose Mr. Lashbrook's medical records at the omnibus hearing was erroneous. Specifically the defendant alleges that the trial court erred in not ordering the county attorney to secure consent from the victim and produce these documents under Arizona Rule of Criminal Procedure 15.1(e), 17 A.R.S., or under the court's inherent authority to order discovery. Corbin v. Superior Court of Maricopa County, 103 Ariz. 465, 445 P.2d 441 (1968); Helm v. Superior Court of Cochise County, 90 Ariz. 133, 367 P.2d 6 (1961).

Mr. Lashbrook testified at the trial that he had been diagnosed as a paranoid schizophrenic in 1952 and had spent about eight years in various institutions because of the problem. He testified that on occasion this disability produced month to month or even day to day loss of memory. Mr. Lashbrook's testimony itself illustrates the problem in that he was able to clearly remember some things and admittedly unable to recollect others.

Arizona has long been committed to a broad interpretation of its discovery rules, but mere "fishing expeditions" are not countenanced. Corbin v. Superior Court of Maricopa County, supra. The reasoning has been that matters are more fairly decided when opposing sides are armed with all relevant facts rather than engaging in covert operations to ferret out the facts or out maneuver the "enemy". This feeling was expressed by Chief Justice Hays in State v. Ford, 108 Ariz. 404, 499 P.2d 699 (1972), cert. denied. 409 U.S. 1128, 93 S.Ct. 950, 35 L.Ed.2d 261 (1973):

"We believe that a trial court should exercise its discretion in favor of seeing that the accused is furnished with every fact necessary to prepare the best possible defense. The modern trend in discovery proceedings is to have the winner determined by the facts, rather than by which side is the most ingenious in 'playing the game.'" 108 Ariz. at 409, 499 P.2d at 704.

Rule 15.1 of the new Rules of Criminal Procedure outlines required disclosures by the state in all criminal cases. Subsection (d) states:

"The prosecutor's obligation under this rule extends to material and information

in the possession or control of members of his staff and of any other persons who have participated in the investigation or evaluation of the case and who are under the prosecutor's control."

Clearly Mr. Lashbrook did not become an agent of the prosecutor's office by his cooperation. It follows from this that the prosecution in no way could be said to have concealed information relating to the guilt or innocence of the accused, required to be disclosed under 15.1(a) or in contravention of our holding that "the state is duty bound to disclose evidence which may be favorable to the defense and which may not be reasonably known to or discoverable by the defense whether or not it is requested." State v. Salcido, 109 Ariz. 380, 509 P.2d 1027 (1973). The Maryland Court of Appeals reached a similar conclusion in Avery v. State, 15 Md.App. 520, 292 A.2d 728 (1972) where it stated:

> "In respect to the appellant's (1) the fact that Miss Hall as the victim of a crime is the complaining witness used by the State in the prosecution of the instant case does not ipso facto cause her to become an agent and representative of the State. As a cooperative victim, she assisted the police in their investigation of the case. As the prosecuting witness at the trial, she testified to what she had observed and heard concerning the appellant's conduct. She was in no sense an agent of the police or of the State." 15 Md.App. at 536, 292 A.2d at 740–741.

■ The comment to Rule 15.1(d) and scant case law on point, however, indicate that the scope of discovery under subsection (e) extends beyond records within the possession or control of the prosecution to include documents in the possession of a third person. State v. Superior Court of Pima County, 20 Ariz.App. 33, 509 P.2d 1070 (1973); State v. Street, 11 Ariz.App. 211, 463 P.2d 106 (1969). See comment to Rule 15.1(d). Rule 15.1(e) of the Criminal Rules of Procedure states:

> "Disclosure by Order of the Court. Upon motion of the defendant showing that he has substantial need in the preparation of his case for additional material or information not otherwise covered by Rule 15.1, and that he is unable without undue hardship to obtain the substantial equivalent by other means. * * *"

The introductory comment to the new Criminal Rules dealing with discovery supports our belief that disclosures authorized under 15.1(e) are "available in the court's discretion." We are not prepared to modify a ruling under this subsection in the absence of a clear abuse of discretion.

■ Appellant has failed not only to demonstrate such compelling "substantial need" that denial of his motion constituted an abuse of discretion, but also neglected to demonstrate any prejudice caused thereby other than an assertion of "surprise" at the pretrial hearing and trial. Just what surprise defendant is referring to is difficult to ascertain in that the complaining witness made himself available for an interview with counsel for the defendant approximately one week before the pretrial hearing, at which time the defendant was made aware of the mental condition and afforded a full opportunity to elicit further information. The record of the trial graphically displays just how informed the defense was of the impeaching potential of the victim's affliction. Mr. Lashbrook admitted that he had memory problems, was a paranoid schizrophrenic, had spent eight years in mental institutions and was taking medication which in conjunction with alcohol could hamper his ability to recollect events. The jury obviously chose to believe Mr. Lashbrook's assertions as to what he was able to remember, which together with the officer's testimony comprised a strong case for the state.

Defendant concedes that even had the trial court granted his motion the witness could still have invoked the doctor-patient privilege under A.R.S. § 12–2235, which would not constitute unconstitutional concealment by the state. Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); Brady v. Maryland, 373 U.S. 83,

83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Avery v. State, 15 Md.App. 520, 292 A.2d 728 (1972).

The question of whether a trial court may ever order a witness under Rule 15.1 (e) or its inherent power to produce medical records is not before this court today. We feel obliged to note, however, that any possible embarrassment accompanying such disclosures would compound the natural reluctance of persons to appear as witnesses at criminal trials.

We find no abuse of discretion in the trial court's denial of the motion in the instant case.

■ Defendant next assigns as error the admission under the excited utterance exception to the hearsay rule of certain testimony by Officer Martin relating to the events preceding the robbery itself. Specifically that all statements made by Mr. Lashbrook to Officer Martin just after the robbery which referred to the contact with Mrs. Kevil at Pete's Lounge and her brief discussion there with a man bearing some resemblance to Mr. Kevil were objectionable as hearsay not within the so-called "res gestae" exception.

■ The law in Arizona on this point is well settled.

"This State is committed to the Wigmorian view of excited utterance exception to the hearsay rule. 6 Wigmore on Evidence (3rd Ed.), § 1750, p. 142, et seq.

'These statements would obviously be hearsay unless they are admissible under the "excited utterance" or "spontaneous exclamation" exception to the hearsay rule. The requisites for an excited utterance are as follows:

1. There must be a startling event.

2. The words spoken must be spoken soon after the event so as not to give the person speaking the words a time to fabricate.

3. The words spoken must relate to the startling event. State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952).'

"State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208, 218 (1965)." State v. Dixon, 107 Ariz. 415, at 417–18, 489 P.2d 225, at 227–28 (1971).

In the absence of clear abuse we will defer to the sound discretion of the trial court. State v. López, 107 Ariz. 214, 484 P.2d 1045 (1971).

As appellant is forced to concede, the first two requirements in the above test are clearly satisfied. Appellant, however, asserts that "the words spoken" concerning earlier events at Pete's Lounge do not relate to "the startling event" or robbery. We do not agree. Such a claim not only overlooks the entire thrust of the prosecution but also the natural implications flowing from the jury's finding of guilt. The state sought to portray Mr. Lashbrook as a man having been "set up," enticed from Pete's Lounge by Mrs. Kevil's agreement to go to her apartment and then, according to a plan worked out at the bar, being robbed by Mr. Kevil in the alley his wife apparently suggested as a short-cut. Thus the activity appellant objects to is clearly related to the startling event. We agree with the court in People v. Bush, 56 Cal. App.2d 877, 133 P.2d 870 (1943), which noted that the permissible latitude of an excited utterance may vary as situations vary.

"Owing to the varying phases of human affairs, it is not possible to lay down a rule which will determine what is the res gestae in every case, and each case must be determined upon its own peculiar facts. [citations omitted]

"The res gestae embraces not only the actual fact of the transaction and the circumstances surrounding it, but the matters immediately antecedent to and having a direct causal connection with it, as well as acts immediately following it and so closely connected with it as to form in reality a part of the occurrence." 56 Cal.App.2d at 883, 133 P.2d at 873.

We consider the testimony of Officer Martin concerning Mr. Lashbrook's excited and spontaneous rendition of the events at Pete's Lounge to be inextricably related to

the robbery itself, satisfying this court's three-prong test for the admissibility of an excited utterance as an exception to the hearsay rule.

██ Defendant's third contention is that his motion for a continuance was improperly denied at the pretrial hearing. The continuance allegedly was necessary to further investigate Mr. Lashbrook's mental condition. We have stated on innumerable occasions that "the broad discretion of the trial [court] on this matter will not be disturbed unless the discretion has been shown to have been so abused as to prejudice [the] defendant." State v. Williams 108 Ariz. 382, 499 P.2d 97 (1972); State v. Kendall, 107 Ariz. 28, 481 P.2d 265 (1971). In the instant case the victim made himself available for an interview with counsel for the defense approximately one week before trial at which time counsel was afforded an opportunity to thoroughly interrogate Mr. Lashbrook on his mental problems. A significant amount of impeaching information was obtained during this conference and utilized later at trial. Defendant has shown nothing which would indicate any prejudice as a result of the judge's ruling against a continuance and a search of the record leaves us unable to find any.

██ Defendant's fourth contention is that the trial court erred in allowing Officer Miller to testify as to Mr. Lashbrook's extrajudicial identification of Mrs. Kevil as the woman he met at Pete's Lounge that "set him up." Appellant asserts that such hearsay does not fall within the recognized exception for extrajudicial identifications because the victim was unable to later make an in-court identification.

In Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (n. 3) (1967), the United States Supreme Court noted:

"There is a split among the States concerning the admissibility of prior extrajudicial identifications, as independent evidence of identity, both by the witness and third parties present at the prior identification. See 71 A.L.R.2d 449. It has been held that the prior identification is hearsay, and, when admitted through the testimony of the identifier, is merely a prior consistent statement. The recent trend, however, is to admit the prior identification under the exception that admits as substantive evidence a prior communication by a witness who is available for cross-examination at trial. See 5 A.L.R.2d Later Case Service, 1225–1228. That is the California rule." 388 U.S. at 272–73, 87 S.Ct. at 1956, 18 L.Ed. 2d at 1186 (n. 3).

In State v. Taylor, 99 Ariz. 151, 407 P.2d 106 (1965), this court expressed its agreement with the modern rule "that an identification made prior to the trial is of greater significance than one made in the courtroom, and that testimony of one who has observed such an incident is fully admissible." We have repeatedly cited and quoted extensively from People v. Gould, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960), as in accord with our analysis of the admissibility of extrajudicial identifications. State v. Taylor, supra; State v. Simoneau, 98 Ariz. 2, 401 P.2d 404 (1965); State v. Miranda, 98 Ariz. 11, 401 P.2d 716 (1965). See also State v. Chaney, 5 Ariz.App. 530, 428 P.2d 1004 (1967). In People v. Gould, supra, Justice Traynor writing for the California Supreme Court stated:

"Evidence of an extra-judicial identification is admissible, not only to corrobate an identification made at the trial * * * but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached * * *, evidence of an extra-judicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recog-

nition in the witness' mind [citations omitted] 4 Wigmore, Evidence (3d ed. 1940) § 1130, p. 208. The failure of the witness to repeat the extra-judicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extra-judicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination. [citations omitted] 3 Wigmore, Evidence (3d ed. 1940) § 1018, pp. 687–688.

\* \* \* \* \* \*

"An extra-judicial identification that cannot be confirmed by an identification at the trial is sufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime." 54 Cal.2d at 626–27, 631, 7 Cal. Rptr. at 275, 278, 354 P.2d at 867, 870. See also Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (n. 3) (1967).

In the instant case evidence other than the extrajudicial identification existed upon which the jury could have based its finding of guilt. Mrs. Kevil is alleged to have spoken with a man resembling the assailant, her husband, just fifteen minutes before leaving Pete's Lounge. It would have been quite reasonable for the jury to assume Mrs. Kevil suggested the short cut through the alley, the victim having never been to her apartment. Accordingly we have no difficulty in upholding the trial court's decision to allow Officer Miller's testimony as to Mr. Lashbrook's extrajudicial identification of Mrs. Kevil as the woman he met at the bar and accompanied to the place of the robbery.

Appellant's argument that State v. Zaragosa, 6 Ariz.App. 80, 430 P.2d 426 (1967), is controlling is not persuasive in that the decision was based on the mistaken belief there were "no cases as in the instant case where the witness is unable to testify positively as to the identity of the defendant at the trial," obviously ignoring the full import of People v. Gould, supra.

Defendant's fifth and final contention is that the trial court erred by allowing Officer Martin to give expert testimony as to "roll jobs", a term used to describe the setting up of a man by a woman for a strong arm robbery in a park or an alley by her male accomplice. Specifically the defendant alleges that such testimony should have been excluded because of the state's failure to comply with Rule 15.1(a)(3) requiring pretrial disclosure of the identity of expert witnesses, because Officer Martin did not qualify as an expert and because the topic was one of common knowledge, thereby rendering it unnecessary and invading the province of the jury.

 It is well settled that the admission of expert testimony is a question within the sound discretion of the trial court and will not be altered absent a showing of prejudicial abuse of that discretion. State v. Brierly, 109 Ariz. 310, 509 P.2d 203 (1973); State v. Pennye, 104 Ariz. 146, 449 P.2d 611 (1969); State v. Espinosa, 101 Ariz. 474, 421 P.2d 322 (1966); State v. Reyes, 99 Ariz. 257, 408 P.2d 400 (1965). See also Annot., 14 A.L.R.3d 1262 (1967).

 The Court of Appeals in City of Phoenix v. Schroeder, 1 Ariz.App. 510, 405 P.2d 301 (1965), accurately spelled out Arizona law on this issue:

"Defendants contend most strenuously that there is enough evidence and sufficient witnesses from which the jury might well have found these facts upon their own, and that to allow the expert to testify concerning these same facts invades the province of the jury and shifts the responsibility for determining the ultimate facts of the case from the jury to the experts. Defendants contend this creates a trial by experts rather than trial by jury.

\* \* \* \* \* \*

"And, clearly, an expert should not be permitted to express his opinion in a mat-

ter on which the opinion cannot aid the trier of fact in determining the truth of the fact. If the jury is as competent to determine the fact in issue as the expert, ordinarily the expert's opinion will be of no assistance and should not be admitted. * * * Where, however, the qualifications of the expert witness are such that his knowledge of the matter in relation to which his opinion is sought will probably aid the trier of fact (the jury) in determining the truth, then that testimony may be admitted * * *." 1 Ariz.App. at 514–15, 405 P.2d at 305–06.

We find no abuse of discretion in the trial court's decision that Officer Martin's testimony as to "roll jobs" and expression of opinion as to what took place in the instant case would "probably aid the trier of fact (the jury) in determining the truth."

We concur with the California court's reasoning in People v. Clay, 227 Cal.App.2d 87, 38 Cal.Rptr. 431 (1964). The case involved "till-tapping", a scheme whereby the defendant distracted a cashier's attention while his accomplice grabbed a handful of money from the register:

"It was the testimony of the inspector on the *modus operandi* of till tapping which threw a spotlight on the episode as a whole and thus enabled the jury to see the possibility of a relationship between the acts of the two men. This gave meaning to the evidence and permitted the jury to appreciate that defendant's activities while in themselves seemingly harmless, when considered with those of Davis, might well have been part of a cleverly planned and precisely executed scheme known as 'till tapping.'

* * * * * *

In net effect, the question and answer told the jury that the pertinent facts and circumstances were consistent with the modus operandi of till tappers. The inspector's opinion was not binding on the jury who were free to determine its

weight or to disregard it entirely if they found it unreasonable." 227 Cal.App.2d at 95, 99, 38 Cal.Rptr. at 436, 438–39. See also Annot., 100 A.L.R.2d 1421 (1965).

We do not agree with appellant that Officer Martin was "patently unqualified" as an expert on "roll jobs". The extent of the officer's training and experience goes to the weight of his testimony rather than its admissibility in this case. State v. Pennye, supra. Not only did he have five and a half years experience on the Tucson Police Force but testified as to personal contact with or investigation of at least twelve similar instances. Thus we are not prepared to find that the trial court abused its discretion in determining the competency of the witness. State v. Espinosa, supra.

The appellant's final objection to the admission of the expert testimony is that it should have been barred because of the prosecutor's failure to comply with Criminal Rule of Procedure 15.1(a)(3) which requires the following disclosures by the state:

"The names and addresses of experts who have personally examined a defendant or any evidence in the particular case, together with the results of physical examinations and of scientific tests, experiments or comparisons, including all written reports or statements made by them in connection with the particular case."

Defendant argues such noncompliance should have resulted in a refusal to allow the expert testimony under Criminal Rule 15.7(d) or the declaring of a mistrial under 15.7(e). We do not agree. Without approving of the prosecutor's neglect we feel compelled to note that the sanctions provided for in Criminal Rule 15.7 are discretionary with the court and are to be imposed where "just under the circumstances". It is difficult to see how the de-

fendant was in any way prejudiced by the late notice such testimony would be offered. Defendant fails to assert that the tardiness prevented him from securing a rebuttal witness, an objection commonly appropriate in other cases. The absence of such an objection confirms our belief that this is not a case where a rebuttal expert could be found, Officer Miller having testified as to an objectively discernable pattern in certain robberies which are well known throughout the law enforcement community. Accordingly we find the trial court did not abuse its discretion.

The judgment of the trial court is affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.