689 P.2d 532

**Michael John MURPHY, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona In and For the COUNTY OF MARICOPA, the Honorable Dorothy M. Carson, a Judge thereof, and the State of Arizona, Real Parties in Interest, Respondents.**

**No. 17314–SA.**

Supreme Court of Arizona, En Banc.

Sept. 26, 1984.

Reconsideration Denied Nov. 6, 1984.

---

Kenneth D. Freedman, Phoenix, for petitioner.

Thomas E. Collins, Maricopa County Atty., Phoenix by Larry Morehouse, Deputy County Atty., for respondents.

HOLOHAN, Chief Justice.

Petitioner, Michael John Murphy, was indicted on October 11, 1983 for two counts of attempted sexual assault in violation of A.R.S. § 13–1001, and one count of sexual assault in violation of A.R.S. § 13–1406. On October 31, 1983, the Maricopa County

Superior Court, after a hearing, found that petitioner's probation had been violated based on the alleged crimes.

In November of 1983, petitioner moved in the criminal case to compel a psychological examination of the alleged victim and to compel the depositions of the victim and her victim assistance caseworker (victim/witness advocate). On December 6, after argument, the trial judge denied both pre-trial motions. Petitioner sought relief in a petition for special action to this court. We accepted jurisdiction pursuant to Art. 6, § 5(4) of the Arizona Constitution and granted the requested interlocutory stay of the proceedings below.

The facts relevant to our determination are as follows. The prosecutrix is a 35 year old widowed mother of two children who was attending business college while supporting herself by working at a Circle K. She had never been treated by a mental health expert or seen a psychiatrist, psychologist or counselor, nor previously been the victim of sexual abuse or a sexual assault.

On August 4, 1983 petitioner and prosecutrix had a date at petitioner's home. They joined two other couples having a party in the front room. The television was on with the volume turned up and a stereo was also playing loudly. Petitioner made aggressive passes at the prosecutrix, who resisted his advances. He then asked her to go into another room with him to talk, took her into the room, which turned out to be his bedroom, and closed the door. The other couples remained in the front room, did not hear anything from the bedroom and did not see the prosecutrix again that evening.

In the bedroom, the prosecutrix alleges that petitioner attacked her and forcibly attempted vaginal and anal intercourse. She testified that during the attack she was terrified, resisted, and screamed for help, but no one came, presumably because of the noise from the TV and stereo. Petitioner agreed to stop attempting intercourse if she would perform oral sex on him, which she agreed to do. During the

act, he fell asleep and she was able to escape. When she ran from petitioner's home, the front room was dark and she saw no one. She went to a Circle K and called the police.

One of the other females present at the party testified that the TV and stereo remained on at high volume when the alleged attack occurred and that petitioner later instructed her to lie and say that he had gone to bed on the front room couch and that the prosecutrix had gone home. The police investigation revealed that the prosecutrix had several bruises and markings about her breasts, corroborating her account of the struggle.

## MOTION TO COMPEL PSYCHOLOGICAL EXAMINATION

Petitioner asserts that the trial court erred in denying his motion to compel the prosecutrix to submit to an examination by his psychologist so that petitioner might be able to impeach the prosecutrix' credibility at trial. Petitioner primarily relies on *State v. Roberts*, 139 Ariz. 117, 677 P.2d 280 (App.1983). In *Roberts*, however, the issue was whether a psychologist who had *already* examined the main prosecution witness, a mildly retarded nine year old female victim, to determine her competency, could testify at trial as to her credibility. We addressed the issue of compelling the psychological or psychiatric examination itself in *State v. Wahrlich*, 105 Ariz. 102, 459 P.2d 727 (1969). There we adopted the holding and language of *Ballard v. Superior Court of San Diego County*, 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416 (1966), that the finding of necessity for ordering a psychiatric examination was discretionary with the trial court and "[s]uch necessity would generally arise only if little or no corroboration supported the charge and if the defense raised the issue of the effect of the complaining witness' mental or emotional condition upon her veracity." *Wahrlich, supra* 105 Ariz. at 105, 459 P.2d at 730, *quoting Ballard,* 49 Cal.Rptr. at 313, 410

P.2d at 849. *See also State v. Jerousek,* 121 Ariz. 420, 590 P.2d 1366 (1979) (applying *Ballard* to the ordering of psychiatric examinations of sex crime victim for competency). In *State v. Morrow,* 111 Ariz. 268, 528 P.2d 612 (1974), another sex crime case, we cited *Wahrlich* in noting that "whether such an examination should be required is left to the sound discretion of the trial court." *Id.* at 270, 528 P.2d at 614.

, Petitioner asserts that granting a psychological evaluation of an alleged victim of a sexual criminal act is to be liberally exercised in favor of the defense. He relies for this proposition in part on *People v. Russel,* 69 Cal.2d 187, 443 P.2d 794, 70 Cal.Rptr. 210, *cert. denied,* 393 U.S. 864, 89 S.Ct. 145, 21 L.Ed.2d 132 (1968) and *People v. Newton,* 244 Cal.App.2d 82, 52 Cal.Rptr. 727 (1966). In *Russel* and *Newton,* however, as in *Roberts, supra,* the issue was the admission of existing examination results, not the ordering of an examination. Furthermore, the discussion in *Russel* concerning the ordering of an examination was *dicta* and relied upon *Ballard, supra* ("if the circumstances indicate a necessity"). 443 P.2d at 799, 70 Cal.Rptr. at 215.

The rule in *Ballard* and *Wahrlich* represents a judicious compromise between two conflicting positions. The first, the so-called "Wigmore rule" is that a victim of a sexual offense, especially if her testimony is uncorroborated, should be subjected to a psychiatric examination as a matter of course because of the likelihood of sexual psychopathology causing her to make false accusations. *See* 3A Wigmore on Evidence, §§ 924(a), 934(a) (Chadbourn Rev. 1970); *cf.* McCormick, *Handbook on the Law of Evidence,* § 45 at 95–96 (2d Ed.1972). The second, more modern position is based on countervailing opinions that victims of sex crimes are no less reliable than other witnesses, that psychiatric testimony on the credibility of witnesses is expensive and time consuming and in any case is of dubious value, and that requiring all such witnesses to be so examined would inconvenience them, invade their privacy, deter many of them from disclosing such

offenses, *see, State v. Kevil,* 111 Ariz. 240, 527 P.2d 285 (1974), and serve as a tool for harassment. *See United States v. Benn,* 476 F.2d 1127 (D.C.Cir.1972) (Bazelon, C.J.).

The "Wigmore rule" once enjoyed considerable support, but this position has been largely repudiated. *See, e.g., State v. Romero,* 94 N.M. 22, 27, 606 P.2d 1116, 1121 (App.1980) ("based on outmoded notions ... and, as such, should be discarded altogether"); *State v. Looney,* 294 N.C. 1, 18, 240 S.E.2d 612, 622 (1978) ("completely unrealistic and unsound"); O'Neal, *Court Ordered Psychiatric Examination of a Rape Victim—Or How Many Times Must a Woman be Raped?,* 18 Santa Clara L.Rev. 119 (1978). The "Wigmore rule" appears to be founded, not in fact, but in old attitudes critical of the credibility of a rape prosecutrix' testimony which we held in *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976), to be "fostered by the fallacy that the crime of rape is characterized by a high incidence of unwarranted accusations and prosecutions which rely on the uncorroborated testimony of the alleged victim." *Id.* at 27, 545 P.2d at 951; *see also,* Bienen, *A Question of Credibility: John Henry Wigmore's Use of Scientific Authority in Section 924a of the Treatise on Evidence,* 19 Cal. W.L.Rev. 235 (1983).

We find the rationale for the "Wigmore rule" unpersuasive. The standard for determining when a witness should be ordered to undergo a mental examination is no different for sex crime victims than for other witnesses. *See State v. Piatt,* 132 Ariz. 145, 644 P.2d 881 (1981). An apparent majority of states now follow the *Ballard* view that the trial court has discretion to order a psychiatric examination of a complaining sex crime witness if *compelling* reasons are shown on the record. *State v. Buckley,* 325 N.W.2d 169, 171 (N.D.1982). We find no reason to liberalize the grounds for ordering such an examination and hold that the party requesting a witness' examination must show that the examination is neces-

sary. Such a need generally arises "only if little or no corroboration support[s] the charge and the defense raise[s] the issue of the effect of the complaining witness' mental or emotional condition upon her veracity." *Wahrlich, supra* 105 Ariz. at 105, 459 P.2d at 730 (citation omitted). We emphasize that where, as here, the victim-witness is an adult of normal intelligence with no history of mental problems, and the defense merely raises the issue without offering evidence on the record impugning the witness' psychological stability or testimonial credibility, such an allegation is in the nature of a fishing expedition and is insufficient grounds for ordering an examination. *See State v. Boisvert,* 119 N.H. 174, 400 A.2d 48 (1979); *State v. Kahinu,* 53 Hawaii 536, 498 P.2d 635 (1972), *cert. denied,* 409 U.S. 1126, 93 S.Ct. 944, 35 L.Ed.2d 258 (1973).

## MOTION TO COMPEL DEPOSITIONS OF PROSECUTRIX AND VICTIM ASSISTANCE CASEWORKER

A victim assistance caseworker, or victim/witness advocate, provides short term counseling to victims or witnesses of crimes, including emotional support, referrals to agencies providing specialized aid, and information concerning police and judicial procedures, both directly after a crime and throughout the course of a prosecution. Besides benefitting the victim or witness, this innovation encourages such individuals to come forward and to satisfactorily participate in prosecutions.

Terrance L. Neary, a victim assistance caseworker working under the Glendale Community Services Department, first met the prosecutrix at the Glendale Police Department the night of the attempted rape as she was giving a statement to the police. He counseled her, accompanied her to a hospital, and later telephoned her several times to explain the status of her case.

Neary accompanied her to Glendale Justice Court and to the probation violation hearing to provide emotional support while she was testifying.

Petitioner's counsel scheduled interviews with the prosecutrix and Mr. Neary for November 22, 1983 at the county attorney's office. The prosecutrix refused to submit to an interview unless Neary was present. Mr. Neary, who had never before been interviewed as a victim assistance caseworker, also refused to be separately interviewed, apparently because he was not allowed to be present at the prosecutrix' interview. On November 25, petitioner moved to compel their depositions under Rule 15.3, Rules of Criminal Procedure, 17 A.R.S., which motion was denied by the trial judge.[1]

"[A]s a matter of fundamental fairness, '... justice dictates that the defendant be entitled to the benefit of any *reasonable* opportunity to prepare his defense and to prove his innocence.'" *State ex rel. Corbin v. Superior Court,* 103 Ariz. 465, 468, 445 P.2d 441, 444 (1968), quoting *State ex rel. Mahoney v. Superior Court,* 78 Ariz. 74, 275 P.2d 887 (1954) (emphasis in original). Rule 15.3 of our Rules of Criminal Procedure, 17 A.R.S., reads in pertinent part:

a. Availability. Upon motion of any party or a witness, the court may in its discretion order the examination of any person except the defendant upon oral deposition under the following circumstances:

\* \* \* \* \* \*

(2) A party shows that the person's testimony is material to the case or necessary adequately to prepare a defense or investigate the offense, that he was not a witness at the preliminary hearing, and that he will not cooperate in granting a personal interview;
\* \* \* [2]

1. The trial court order addressed the deposition of the prosecutrix, however, failed to mention Neary's deposition. Both parties ignored this oversight in their briefs to this court; we have proceeded to treat the trial judge's order as inadvertent error and to assume both depositions to be at issue.

2. Because the prosecution made no claim here that petitioner's probation violation hearing was the substantial equivalent of a preliminary hear-

While "there is no general constitutional right to discovery in a criminal case," *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30, 42 (1977), we have recognized that Rule 15.3 is intended to effectuate the constitutional right of cross-examination contained in the confrontation clause of the Sixth Amendment of the United States Constitution. *State v. Jessen*, 134 Ariz. 458, 657 P.2d 871 (1982). In *State ex rel. Baumert v. Superior Court*, 133 Ariz. 371, 373, 651 P.2d 1196, 1198 (1982), we said:

> [T]he purpose of allowing pretrial discovery in criminal cases is based on the principle that both the prosecution and the accused should be in possession of all relevant and reasonably accessible information prior to trial. The Rules of Criminal Procedure facilitate the exchange of information between the State and an accused in order to avoid surprise, delay, and to sharpen and narrow the issues for trial.

■ The prosecution asserts that the victim assistance caseworker is not a material witness because the caseworker does not interview the victim/witness about the substance of the offense. Mr. Neary's affidavit states that he never questioned prosecutrix as to the details of her case or discussed specific testimony with her.[3] Nonetheless, we believe it is entirely possible that a victim assistance caseworker, who is frequently in close contact with a distraught victim only moments after an incident, will learn details of the incident which would make the caseworker a proper subject for discovery as a potential impeachment witness.

■ The Legislature has not granted victim assistance caseworkers any statutory privilege to avoid examination concerning communications made to them. *Compare* A.R.S. Title 12, article 4 (A.R.S. §§ 12–2231 through 12–2237) [husband-wife, clergyman-penitent, doctor-patient, and reporter-informant privileges]. Nor does any constitutional privilege apply such as the constitutional privilege against self-incrimination granted by the Fifth Amendment. Therefore, victim assistance caseworkers generally fall within Rule 15.3 as being "material to the case or necessary adequately to prepare a defense or investigate the offense."[4] Caseworkers are subject to the same principles concerning discovery which would apply to anyone in whom a victim or witness confided. We hold, therefore, that the caseworker Neary, by refusing to be interviewed, was uncooperative and is a proper subject for deposition, and that the trial court abused its discretion in denying the motion for discovery.

■ Regarding the interview with the prosecutrix herself, a witness is uncooperative within the meaning of Rule 15.3 "[w]here the witness attached such conditions to an interview that it makes the situation untenable for defense to discover needed material." *Kirkendall v. Fisher*, 27 Ariz.App. 210, 212, 553 P.2d 243, 245 (1976). The presence of a prosecutor at a witness' interview does not make a witness uncooperative, because a Rule 15.3 "personal" interview does not mean a "private" interview. *State v. Deddens*, 26 Ariz.App. 241, 547 P.2d 512 (1976); *see also State v.*

---

ing, we need not address that issue. (Counsel for petitioner claimed he was not fully prepared at that hearing). *Cf. State v. Jessen*, 134 Ariz. 458, 657 P.2d 871 (1982); *State v. Superior Court*, 122 Ariz. 594, 596 P.2d 732 (App.1979).

**3.** Jane D. Bradley, Director of the Victim/Witness Program of the Maricopa County Attorney's Office, attested by affidavit that her victim/witness advocates discourage victims or witnesses from revealing case details to the advocate because it is unnecessary for counseling

purposes and would make the advocate a potential court witness.

**4.** This is not to say the caseworker is to be considered an agent of the police as petitioner erroneously urges here. Whether caseworkers are employed by a city's community service department, like Mr. Neary, or by a county attorney's office, they only counsel and advise their clients, they do not investigate crimes nor function as police officers.

*DeRose*, 128 Ariz. 299, 625 P.2d 362 (1981).[5] In general, however, "[t]he decision as to whether the interview [will] be private is neither for the prosecutor or the defense counsel but rests with the witness." *Mota v. Buchanen*, 26 Ariz.App. 246, 251, 547 P.2d 517, 522 (1976). Nothing in Rule 15.3 or elsewhere prohibits a witness from having someone present to provide sympathy and moral support. Indeed, especially in cases involving crimes against the person, the presence of a sympathetic person to support the witness may well help produce more complete information than if the witness were questioned alone in a hostile, frightening environment. We find no basis for petitioner's claim that the caseworker would unduly influence a victim-witness interview or that a psychological examination is needed to determine the extent of the caseworker's influence on the witness. Counsel could determine whether undue influence was present by questioning the caseworker and the victim separately. We, therefore, hold that the presence of a victim assistance caseworker or victim/witness advocate at a victim-witness interview does not amount to non-cooperation if the caseworker-advocate's role is confined to moral support and does not include comment on the substantive matters of the interview.

▆ Petitioner also contends that if the caseworker not only attends a witness' interview but also is himself the subject of an interview, the defense will be unable to discover impeachment material. "[T]he purpose of the interview is to ascertain each individual witness' [description] of the event in question in order for counsel to build his defense and determine areas of discrepancy to use in his client's behalf."

*Kirkendall v. Fisher, supra,* 27 Ariz.App. at 212, 553 P.2d at 245 (several undercover agents' refusal to grant separate interviews was non-cooperation). We believe defense counsel can avoid such problems by the method of scheduling the interviews. The interview or deposition of the caseworker can be conducted without the presence of the victim and before the interview with her.

The defense is entitled to interview the victim and the caseworker. As noted before the victim is not deemed uncooperative because she wanted the presence of the caseworker, so the order of the superior court denying the defense motion to take her deposition was correct. The caseworker, however, refused to be interviewed. This is a sufficient showing of the uncooperativeness of the witness. The trial court should have allowed the defense to take the deposition of the caseworker.

The order of the respondent judge denying the defense motion for taking the deposition of the victim assistance caseworker is vacated; all other relief sought by petitioner is denied.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

▆

---

5. Contrary to petitioner's assertion, *State ex rel. Baumert v. Superior Court,* 133 Ariz. 371, 651 P.2d 1196 (1982), did not disapprove of this holding, but only overruled *Deddens* and *De-Rose, supra,* to the extent that a witness' refusal to be tape recorded at an interview did not make him or her non-cooperative. This latter holding addressed the untenable situation that a defense attorney would face of having to take the stand to dispute a witness' testimony at trial if no tape recording or other record of the witness' prior statements had been made.