NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JESSE SAMUEL HOAG, *Appellant.*

No. 1 CA-CR 16-0208
FILED 5-18-2017

Appeal from the Superior Court in Mohave County
No. S8015CR201401433
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Udall Shumway, PLC, Mesa
By Michael Kielsky
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Paul J. McMurdie joined.

---

**J O N E S**, Judge:

¶1        Jesse Hoag appeals his convictions and sentences for two counts of sexual assault.  After searching the entire record, Hoag's defense counsel identified no arguable question of law that is not frivolous.  Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asked this Court to search the record for fundamental error.  Hoag retained private counsel who filed a supplemental brief suggesting the trial court abused its discretion in denying Hoag's motion to compel disclosure of certain telephone records.  After reviewing the entire record, we find no error.  Accordingly, Hoag's convictions and sentences are affirmed.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        The victim met Hoag in January 2014.  At the time, Hoag, a corporal with the Bullhead City Police Department (BCPD), instructed a course the victim took at the local community college.  The victim was in the process of applying to become an officer with the BCPD and reached out to Hoag on October 2, 2014 to ask for help in preparing for the exam.  Hoag, by then promoted to sergeant, agreed to tutor the victim and the two communicated about her schedule.

¶3        At 12:38 a.m. on October 3, 2014, Hoag contacted the victim and offered to "swing by" her house to give her some information on the exam.  The victim ultimately agreed to sneak out the window of her home in Bullhead City, which she shared with her parents and brother, and go out with Hoag for a beer.

---

[1]        "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

¶4        Around 2:00 a.m., Hoag drove the victim to a bar in Laughlin, Nevada where they shared some beers.  When they left around 3:30 a.m., the victim, an inexperienced drinker, was feeling the effects of the alcohol and had to hold on to Hoag to stay balanced.  When they were back in Hoag's truck, she was "in and out . . . [n]ot blacking out, but . . . everything was kind of spinning."  When Hoag pulled over into a dark parking lot on the way back to Bullhead City,  the victim agreed to have sexual intercourse with Hoag in the driver's seat of his truck but after "[n]ot even a minute," she realized it was wrong and "didn't wanna do it anymore."  The victim told Hoag, "I can't do it," and moved back over to the passenger seat.

¶5        Hoag then "came after" the victim, held her down, and continued having sexual intercourse with her on the passenger seat.  The victim told Hoag to get off of her multiple times and finally convinced him to let her get out of the truck to urinate.  When she got back into the truck, she put her clothes back on and asked Hoag to take her home.  Instead, Hoag drove into a dirt lot behind a building.

¶6        The victim told Hoag again she wanted to go home and he became aggressive, pulling her hair and twisting her arm behind her back to keep her still.  When the victim resisted, Hoag told her if she moved, she would get hurt and asked her, "Do you really think I brought you here for tutoring?  Why do you think I only tutor girls and not boys?"  The victim was scared if she left the truck or tried to run, he would "come after" her with his gun.  While they had vaginal sexual intercourse over the course of the next hour, the victim reminded him that she was "somebody's daughter, that he has a daughter, and that [she] was his student," but he was unphased.  At one point, Hoag forced his penis into her mouth until she gagged.  When the victim cried that she wanted to go home, Hoag told her to "shut the fuck up"; when she told him to get off because she could not breathe, he said, "If you can talk, you can breathe."  The victim even faked a heart attack to no avail.

¶7        Eventually, Hoag put his clothes back on and began driving the victim home.  The victim immediately texted her cousin that she had been raped.  On the way home, Hoag told the victim he was sorry for what he had done and would turn himself in the following day.  He repeated those sentiments in a phone call to the victim shortly after she arrived home around at 5:00 a.m.  The victim did not respond to Hoag's further attempts to contact her, via a few texts and approximately fifteen telephone calls, throughout the day.

3

¶8          Around 9:00 a.m. the same day, the victim reported the incident to another officer with the BCPD, whom she described as a family friend.  A sexual assault nurse examination performed that evening revealed a small tear to the victim's external genitalia with "scant bleeding" consistent with forced vaginal penetration.  A second examination five days later revealed bruising on the victim's arms and legs.

¶9          Hoag was charged with two counts of sexual assault — one based upon the sexual intercourse and the other upon the oral sexual contact.  At the close of the State's case, Hoag made an unsuccessful motion for judgment of acquittal, arguing the State presented insufficient evidence to permit the jury to separate the consensual interaction from the non-consensual.

¶10          Hoag defended the charges on the theory that the entire encounter was consensual.  According to Hoag, although he left his home on October 3rd intending to cheat on his girlfriend with someone, the victim initiated much of the sexual contact, while he was a somewhat unwilling participant.  But Hoag did not present with any injuries, and the evidence suggested their prior communications were not flirtatious.  He testified the victim was upset that he was unable to maintain an erection and suggested she reported the interaction as an assault because she felt guilty for cheating on her boyfriend.  Hoag also presented testimony from a sexual assault nurse examiner that the victim's injuries could have occurred through consensual sexual intercourse.

¶11          The jury convicted Hoag as charged.  The trial court sentenced Hoag as a non-dangerous, non-repetitive offender to two consecutive presumptive terms of seven years' imprisonment and credited him with forty days' presentence incarceration.  Hoag timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[2] 13-4031, and 13-4033(A)(1).

**DISCUSSION**

¶12          Within his supplemental brief, Hoag argues the trial court erred in denying his motion to compel telephone records for the victim and the BCPD officer to whom she gave the initial report.  "Generally speaking, justice dictates that a defendant is entitled to the benefit of any reasonable opportunity to prepare his defense."  *State v. Tyler*, 149 Ariz. 312, 314 (App.

---

[2]          Absent material changes from the relevant date, we cite a statute's current version.

1986) (citing *State ex rel. Corbin v. Superior Court*, 103 Ariz. 465, 468 (1968)). Accordingly, pursuant to Arizona Rule of Criminal Procedure 15.1(g):

> Upon motion of the defendant showing that the defendant has substantial need in the preparation of the defendant's case for material or information not [subject to automatic, mandatory disclosure under] Rule 15.1, and that the defendant is unable without undue hardship to obtain the substantial equivalent by other means, the court in its discretion may order any person to make it available to the defendant.

But, "whether a criminal defendant is entitled to discover certain evidence is a matter within the trial court's discretion." *Tyler*, 149 Ariz. at 314 (citing *State v. Roberts*, 139 Ariz. 117, 120 (App. 1983)).

**¶13** In support of his motion, Hoag argued evidence of communication between the victim and the BCPD officer to whom she first reported the assault could "demonstrate[] that [he and the victim] had a close relationship," and, if so, would "raise[] the specter that [the officer] may have influenced [the victim], or other police officers involved in the investigation against Hoag."[3] Hoag argues he established a substantial need for these telephone records.[4] We disagree.

**¶14** Here, the trial court found Hoag's attempt to confirm the nature of the BCPD officer's relationship with the victim and the extent of their contact "goes more towards the fishing expedition . . . as opposed to the investigation," because Hoag had an opportunity to interview the

---

[3] Hoag also argued to the trial court that evidence of his communications with the victim "would be potentially relevant." But Hoag, as a party to those communications, cannot show he is unable to obtain the information without hardship. *See* Ariz. R. Crim. P. 15.1(g) (requiring the defendant to show he "is unable without undue hardship to obtain the substantial equivalent by other means").

[4] Hoag also argues he was not required to show a substantial need for materials within the possession of the State, which he asserts would include materials in the possession of a law enforcement officer participating in the investigation. Hoag does not, however, present any authority suggesting a police officer's private cell phone records are within the prosecutor's direction or control, *see* Ariz. R. Crim. P. 15.1(f)(2), and we are not convinced that is the case.

officer and did not provide any reason to believe the officer was not being honest in the interview. We find no error in this analysis, and it supports the court's conclusion that Hoag did not establish a substantial need for the information.

¶15 Although Hoag argues the request is not broad enough to be a "fishing expedition" because it encompassed the records for a single victim over only a one-year period, it is not the length or breadth of the request which governs the analysis. Rather, a court must consider the reasonableness of the request in light of the particular facts of the case and the nature of the information sought. *Corbin*, 103 Ariz. at 468 ("The trial judge in his sound discretion must determine the reasonableness of a request for the exercise of his inherent power to grant discovery which request might merely be a disguised attempt at a 'fishing expedition' by the defense."). Clearly, "mere conjecture without more" is insufficient to justify a request for disclosure. *State v. Hattan*, 116 Ariz. 142, 150 (1977) (citing *State v. Reynolds*, 108 Ariz. 541 (1972)); *cf. Murphy v. Superior Court*, 142 Ariz. 273, 277 (1984) ("[W]here, as here, the victim-witness is an adult of normal intelligence with no history of mental problems, and the defense merely raises the issue without offering evidence on the record impugning the witness' psychological stability or testimonial credibility, such an allegation is in the nature of a fishing expedition and is insufficient grounds for ordering an examination.") (citing *State v. Boisvert*, 400 A.2d 48, 51 (N.H. 1979), and *State v. Kahinu*, 498 P.2d 635, 642-43 (Haw. 1972)). Yet, Hoag offered nothing more than a mere hope that communications between the victim and the BCPD officer would reveal some motive for the officer to purposefully mishandle what the record otherwise reflects was a thorough and appropriate investigation. On this record, we find no abuse of discretion.

¶16 Further review reveals no fundamental error. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error."). A person is guilty of sexual assault if he "intentionally or knowingly engag[es] in sexual intercourse or oral sexual contact with any person without consent of such person." A.R.S. § 13-1406(A). An act is "without consent" if "[t]he victim is coerced by the immediate use or threatened use of force against a person or property." A.R.S. § 13-1401(A)(7)(a). The record contains sufficient evidence upon which the jury could determine beyond a reasonable doubt Hoag was guilty of the charged offenses.

¶17 All the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Hoag

was represented by counsel at all stages of the proceedings and was present at all critical stages including the entire trial and the verdict. *See State v. Conner*, 163 Ariz. 97, 104 (1990) (right to counsel at critical stages) (citations omitted); *State v. Bohn*, 116 Ariz. 500, 503 (1977) (right to be present at critical stages). The jury was properly comprised of eight jurors, and the record shows no evidence of jury misconduct. *See* A.R.S. § 21-102(B); Ariz. R. Crim. P. 18.1(a). At sentencing, Hoag was given an opportunity to speak, and the trial court stated on the record the evidence and materials it considered and the factors it found in imposing the sentences. *See* Ariz. R. Crim. P. 26.9, 26.10. Additionally, the sentences imposed were within the statutory limits. *See* A.R.S. § 13-1406(B), (C).

## CONCLUSION

**¶18**     Hoag's convictions and sentences are affirmed.

**¶19**     Defense counsel's obligations pertaining to Hoag's representation in this appeal have ended. Defense counsel need do no more than inform Hoag of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to our supreme court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).

**¶20**     Hoag has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.19(a). Upon the Court's own motion, we also grant Hoag thirty days from the date of this decision to file an *in propria persona* motion for reconsideration.



AMY M. WOOD • Clerk of the Court
FILED:  AA

7