## HAWN v. BANGHART.

1.  **Seduction:** ARTIFICE: WHAT AMOUNTS TO: QUESTION FOR JURY. Plaintiff was only about fifteen years old, and a domestic in defendant's family. Defendant, after caresses and kisses and love-making, kept up for some months, finally had sexual intercourse with her, which was often repeated. *Held*, in an action for seduction, that if this preliminary conduct was calculated to overcome the will of a person of her years and experience, and was intended to create in her mind a fondness for him, and it actually did have that effect, and if under that influence she yielded her person to him, this amounted to an "artifice" within the meaning of the law, and that the question as to the sufficiency of the evidence to establish that fact should have been submitted to the jury.
    [SEEVERS, C. J., dissenting.]

2.  ——: DAMAGES: LOSS OF SOCIAL STANDING: EVIDENCE. In an action for damages for seduction, loss of social standing in general may probably be considered in estimating the damages, but the fact that individual acquaintances have refused to recognize the plaintiff, as a result of the seduction, cannot be shown for that or any other purpose.

*Appeal from Jasper District Court.*—HON. DAVID RYAN, Judge.

FILED, SEPTEMBER 8, 1888.

ACTION for the recovery of damages for seduction. At the close of plaintiff's evidence, the court directed the jury to return a verdict for defendant, and entered judgment on the verdict returned in obedience to that direction. Plaintiff appeals.

*Alanson Clark*, for appellant.

*Winslow & Varnum*, for appellee.

REED, J.—I. At the time of her alleged seduction plaintiff was but fifteen years old. Defendant is a

Hawn v. Banghart.

**1. SEDUCTION:** **artifice: what** **amounts to:** **question for** **jury.** married man, about forty-two years old, and she was employed as a domestic in his family. As plaintiff's testimony is the only evidence given on the trial in support of the allegations of the petition, and the principal question in the case is whether upon it she was entitled to have the case submitted to the jury, we set it out as it is contained in the abstract. It is as follows: " I went to his house to work on the eighth of March, 1886, and remained there, with the exception of about one month, until the first of November following. When I was at Mr. Banghart's, in his family, defendant got so, if I came around him, he was always pulling me down on his lap, and hugging and kissing me, and finally I got so I really cared for him. It got to happen quite frequently, and commenced about three months after I first went there. My duties while there required me to make the fires in the kitchen stove, first thing in the morning. While at his home I slept on a lounge in the kitchen. About a month after this kissing and hugging began, something further was attempted. It was a daily occurrence. I finally became so that I cared for him. I went out to make the fire one morning, and the defendant always helped. All the balance of the family were in bed. It was about sun-up. The fire was made in the summer kitchen, about ten feet from the house. When I stooped down to light the match he sat down behind me, and when I started to get up he pulled me down on his lap and tormented me awhile, and then threw me down on the floor, and had sexual intercourse with me, and then let me go. I told him to quit and he said nothing. I did not raise any kind of an outcry. I submitted to him in that way because he had been pretending to make love to me so long that I really loved him. The reasons why I submitted to him as I did were because he had flattered me and kissed me so many times, and pretended to make love to me, that he had got me so I liked him. He had sexual intercourse with me, I guess a dozen times, and the result was I got in a family way."

The material inquiry is whether this testimony had any tendency to prove that plaintiff was induced by any seductive influence, within the meaning of the law, to submit her person to defendant's embraces. If it did, she clearly had the right to have the verdict of the jury upon it. It has often been held that to establish a charge of seduction it must be made to appear that the intercourse was accomplished by some artifice or deception. Something more than a mere appeal to the lust or passion of the woman must be shown before the law will inflict the penalty prescribed for that crime, or afford her a remedy. *Gover v. Dill*, 3 Iowa, 337; *Delvee v. Boardman*, 20 Iowa, 446; *Brown v. Kingsley*, 38 Iowa, 220; *State v. Haven*, 43 Iowa, 181; *Baird v. Boehner*, 72 Iowa, 318. It was contended that the evidence had no tendency to bring the case within this rule; that with the most favorable construction in plaintiff's favor of which it is fairly capable, it did not tend to show either artifice or deception, but, on the contrary, showed merely a yielding to gross solicitation. But we think that view cannot be sustained. The evidence had some tendency, we think, to show that defendant, by his caresses and flatteries, first acquired an influence over her by means of which he afterwards accomplished his purpose. It may be that the virtue of a pure woman of mature years would have been alarmed by his first approaches. Plaintiff, however, was but a child in years. She had the passions of a woman, but lacked the judgment and discretion which come only with age and experience. If the means made use of by defendant were calculated to overcome the will of a person of her years and experience, and were intended to create in her mind an affection for him, and they actually did have that effect, and if under that influence she yielded her person to him, this amounted to an "artifice" within the meaning of the law. And the question as to the sufficiency of the evidence to establish that fact was for the jury.

II. The court excluded certain evidence offered by plaintiff to prove that individual acquaintances with

**2. ——: damages: loss of social standing: evidence.** whom she had associated before the occurrence in question had refused to recognize her, or hold any social intercourse with her since her condition of pregnancy became known. That the loss of social standing, which results from an injury of that character, is a proper matter to be considered in estimating the damage, is probably true. But the effect upon individual members of society cannot be shown for that or any other purpose. Some are inclined to look with charity and forbearance upon the victim of such a wrong, while others treat her with indifference or contempt. The loss of social standing, however, is the uniform result. This loss is matter of common knowledge, and may be taken notice of by the jury without proof. But the treatment of neither of the classes of individuals can be inquired into. For the error in withdrawing the case from the jury, the judgmemt will be

REVERSED.

SEEVERS, C. J., dissenting on the first point.