The State of Iowa v. Edward Donovan, Apellant.

**Seduction:** ARTIFICE: EVIDENCE. Proof of either hypnotic influence
1 or flattery and lovemaking will support a prosecution for seduction where through the exercise of either or both a virtuous woman was induced to yield her person to the defendant's embraces. Evidence held sufficient to warrant conviction.

**Expert witnesses:** QUALIFICATION. To establish a qualification as
2 an expert witness touching a matter connected with his profession, a surgeon need not have acquired his knowledge from actual experience, but may give his opinion based upon information gained from a study of the subject.

**Evidence:** SIMILAR ACTS. On a prosecution for seduction by means
3 of hypnotic influence, evidence of instances where defendant had operated upon other subjects by such influences was admissible.

**Evidence:** PRETENDED ARTIFICE. Where there was evidence that defendant pretended to exercise a hypnotic influence over prose-
4 cutrix, an instruction that the jury should consider the same in determining the question of seduction was proper.

*Appeal from Lyon District Court.*— HON. GEO. W. WAKE-
FIELD, Judge.

FRIDAY, MARCH 10, 1905.

THE defendant was convicted of seduction, and ap-
peals.— *Affirmed.*

*Parsons & Riniker,* for appellant.

*Chas. W. Mullan,* Attorney-General, and *Lawrence De
Graff,* Assistant Attorney-General, for the State.

LADD, J.— The prosecutrix was a school-teacher of three
years' experience, and at the time of the alleged intercourse
was over twenty-two years of age.   The defendant was a
married man, as she well knew, his wife being her cousin.
He pretended to be a hypnotist, and the evidence tended to
establish his ability to exercise control over a subject being
operated upon.   In 1901 he had "put her to sleep" at a
family entertainment at her home, and, according to her ac-
count, she had been under his influence several times since.
Subsequently he told her that he loved her, and thought
more of her than of his wife, and in the spring of 1902
embraced her; saying that he was not satisfied with his
wife, but was with her.   She frequently called at his real
estate office, when he would tell her she was good-looking,
and kiss and caress her, and claimed that he could " sit down
and make a suggestion that she come to his office at a cer-
tain time, and she would come."   If she is to be believed,
she could not stay away.   Finally he happened at her home
when she was alone, and, after imparting the story of his
love, had intercourse with her.   She is unable to say whether
this was by her consent, but knew what was done, and that
it was wrong, and told him it was not the proper thing to do.
On-cross-examination she was asked:   " Q.   You did not let
him have connection with you because he told you he loved

you? . A. I suppose it was through his flattery. . . . Q. What I want to know is which it was done through — hypnotic influence or flattery? A. I don't know exactly. Q. Would you have yielded to him if it had not been for the so-called hypnotic influence? A. I can't say. . . . All I can tell, he had an influence over me in some way — whether through flattery or hypnotism I can't say. I kind of liked him. I don't know if I would have yielded if he hadn't told me that he loved me. I can't tell anything about it. No one knows. I can tell what was done." Asked whether she had said to the grand jury that it was through his power that she had intercourse with him, she answered: " I might have said through his power. He could have used his power through flattery or hypnotism — either one. I told them that I didn't know which it was. All that I know is that I had sexual intercourse with him."

Counsel for appellant insist that the evidence, the substance of which we have set out, was insufficient to sustain a finding that the prosecutrix yielded because of the artifice
1. SEDUCTION: artifice; evidence.
of the accused. It must be conceded that there is some ground for this contention. He was a married man at the time. She knew this, and must have understood that no other than a meretricious relation between them could be anticipated. But the mere fact that the defendant was a married man ought not to shield him. *Hawn v. Banghart,* 76 Iowa, 683. Nor had the further fact that she was unable to determine whether he obtained control over her person through hypnotism or flattery and love-making. It is enough if he succeeded through either artifice or both, and would not have done so but for the exercise of either or both on the part of the defendant. The falsity of such artifices consists in their practice in ostensible innocence, but with the real design of acquiring such an influence over a virtuous woman as shall through them induce her to yield to his embraces. The kind or amount of seductive arts, or the length of time practiced, is not so material

as the fact that they were sufficient to, and did actually, over-come the scruples of the particular woman. *State v. Higdon,* 32 Iowa, 262. Whether those practices were effective must necessarily depend on the facts of each case. Women are not all alike, and what might prove irresistible to one would arouse contempt only in another. About all that may be exacted by the law is that the false arts practiced be some-what calculated to, and in fact accomplish the purpose alleged. From the evidence in the instant case the jury might well have found that the defendant had persistently sought, by flattery and love-making, and by pretending to exercise an occult influence over the prosecutrix, to acquire control over her, and that he so did with the design of gaining possession of her person. True, she testified to being unable to say why she yielded. Had she been able to have stated, her answer would have been in the nature of a conclusion (*State v. Hughes,* 106 Iowa, 125), and not controlling. The object of the defendant, a married man, in his conduct toward prose-cutrix, was not difficult of comprehension; and the jury might well have found that she yielded because of the artifices of flattery and love-making, or of pretended or actual occult influences, or of both, when but for them she would not have done so. We are content with the finding of the jury.

II. Two surgeons were called, and, as tending to estab-lish their qualification to testify as experts of the use of hypnotism as an anæsthetic stated — the one, that he was the superintendent of an insane hospital; had not made an extensive study of the subject, but knew, to a certain extent, what modern authori-ties said on the subject; had never practiced hypnotism, but had witnessed experiments by others; and the other, that he had made some study of the subject; had practiced it some-what, and knew a few of the works recognized as standard authorities, but had never attended a school teaching hypno-tism; there being but one in existence, located in France. Appellant, by proper objections, insisted that neither had

2. EXPERT WIT-NESSES: quali-fication.

shown himself competent. The inquiry related to matters connected with the profession of the witnesses, and, in order to testify concerning the same, they were not required to have derived their knowledge from actual experience or observation. Experts, as every one knows, obtain much of what they know from books, and may express opinions based thereon as well as upon experience. *Collier v. Simpson,* 3 C. & P. 73; *Central R. Co. v. Mitchell,* 63 Ga. 173; *Siebert v. People,* 143 Ill. 571 (32 N. E. 431); *Ft. Wayne v. Coombs,* 107 Ind. 75 (7 N. E. 743, 57 Am. Rep. 82); *Swett v. Shumway,* 102 Mass. 365 (3 Am. Rep. 471); *Caleb v. State,* 39 Miss. 721; *Taylor v. Grand Trunk R. Co.,* 48 N. H. 304 (2 Am. Rep. 229); *Melvin v. Easley,* 46 N. C. 386 (62 Am. Dec. 171); *Mendum v. Com.,* 6 Rand. (Va.) 704 (12 Am. & Eng. Enc. (2d Ed.) 425). See, contra, *Soquet v. State,* 72 Wis. 659 (40 N. W. 391). Whether a person may testify does not depend upon any well-defined standard by which his qualification to speak shall be measured. He should always possess such a degree of knowledge or skill as to enable him to speak intelligently upon the subject, and, beyond this, in passing upon the preliminary proof, much must of necessity be left to the discretion of the trial judge. *State v. Cole,* 63 Iowa, 695. These witnesses had studied the subject in different authorities, and were able to say from their investigation that surgical operations may be performed upon patients in the hypnotic state; having been previously informed of what would be done, and that no pain would result. There was no error in overruling the objection to their competency.

III. According to the story of prosecutrix, defendant claimed to control her movements by what he termed " suggestions," and exercised hypnotic influence over her at different ent times. To prove his power in this direction, 3. EVIDENCE: similar acts. and its nature, the court received, over objection, evidence of instances where he had operated on other subjects, and of the control exerted over them. We

know of no other way by which such proof could have been made. See *State v. Wentworth,* 37 N. H. 196, 211; *State v. Knapp,* 45 N. H. 148; Wigmore on Evidence, sections 220, 225. The evidence was admissible.

IV. The fourth instruction was properly refused for the reason that there was no evidence tending to show that prosecutrix was under " a hypnotized spell " at the time defendant first had intercourse with her. In the

4. EVIDENCE: pretended artifice.

third instruction the jury was told to take into consideration, in connection with other evidence, " the testimony relating to the exercise or attempted exercise of hypnotic influence." This was proper, for, regardless of whether such influence was in fact exercised, the evidence tended to show that he was pretending to exert it on her, and thereby having some effect on her mind. Whether exercised by the accused, or only pretended, is not very important, if in either event it was resorted to as a scheme or artifice to procure the debauch of the prosecutrix. The thought contained in the second instruction refused was incorporated in those given. The connection of hypnotism with the case is merely a matter of evidence, not requiring extended discussion. But see valuable note to *People v. Ebanks,* 117 Cal. 652 (40 L. R. A. 269).

A careful examination of the record has convinced us of defendant's guilt, and that he richly deserves the sentence imposed.—*Affirmed.*