664 P.2d 637

STATE of Arizona, Appellee,

v.

Jasper Newton McMURTREY III, Appellant.

No. 5409.

Supreme Court of Arizona,
In Banc.

March 1, 1983.
Rehearing Denied May 24, 1983.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

Bertram Polis and John O'Brien, Tucson, for appellant.

GORDON, Vice Chief Justice:

On July 13, 1981, a jury found appellant guilty of two counts of first degree murder in violation of A.R.S. § 13–1105(A)(1) and one count of attempted first degree murder in violation of A.R.S. §§ 13–1105(A)(1) and 13–1001. Following an aggravation-mitigation hearing appellant was sentenced to death for each of the murder counts, and to twenty-one years in prison for the attempted murder count. This Court has jurisdiction under Ariz. Const. Art. 6, § 5(3) and A.R.S. §§ 13–4031 and 13–4033. The judgment of conviction as to all counts is affirmed. The sentence for attempted murder is affirmed. The case is remanded for resentencing in connection with the first degree murder convictions.

On the night of August 9, 1979, appellant was involved in a shooting at the Ranch House Bar in Tucson. The evidence adduced at trial indicated that on the evening of the shooting appellant and the three victims in the case engaged in some loud discussions at the Ranch House Bar. Sometime later that night, appellant went out to the parking lot of the bar where he obtained a gun. He walked back into the bar and shot the three victims, killing two and wounding the third. He then fled the bar and the State of Arizona.

A year later, in August of 1980, appellant broke into a farm house in Topeka, Kansas, and tied up the farmer who lived there. The farmer managed to escape and notify police. Appellant surrendered to police after three hours of negotiation during which he wounded one officer. He was then returned to Arizona for prosecution. Appel-

lant's defenses at trial were self defense and insanity.

Appellant raises seven issues on appeal: (1) whether the trial court erred in refusing to order the state to disclose the addresses of some witnesses; (2) whether the shackling of appellant during trial denied him a fair trial; (3) whether the trial court erred in refusing to ask requested voir dire questions; (4) whether the trial court erred in allowing a previously hypnotized witness to testify at trial; (5) whether the testimony of the state's expert witness was improper; (6) whether the refusal of a requested jury instruction was improper; and (7) whether the death penalty was properly imposed.

### FAILURE TO DISCLOSE WITNESSES' ADDRESSES

In October of 1980 the state provided appellant's counsel with a list of witnesses and their statements as required by Ariz.R. Crim.P. 15.1(a). The addresses of some of the witnesses were excised from the list. In January of 1981 defense counsel filed a motion requesting an order compelling disclosure of the addresses. The state responded with a motion requesting a protective order under Ariz.R.Crim.P. 15.5 on the grounds that disclosure of the addresses would result in a risk of harm outweighing any usefulness.

Based on the evidence adduced at the hearing on the motions, the trial court did not order disclosure of the addresses. The judge found that there was a sufficient showing of risk that he should "proceed with caution." His solution was to order the prosecutor to make the witnesses available to defense counsel for interviews, while granting defense counsel leave to renew his motion if, after interviewing the witnesses, he felt he needed the addresses. Defense counsel did interview all the witnesses prior to the beginning of the trial in July of 1981. At no time did he renew his request for disclosure of addresses.

On appeal appellant claims that the failure to order disclosure of the addresses was error requiring reversal. Appellant argues that because the prosecutor did not seek a protective order before excising the addresses from the Rule 15.1(a) disclosure and because the state failed to show that there was a risk of harm in revealing the addresses, the trial court should have ordered the state to disclose the addresses. We do not agree.

It is clear that Rule 15.1 requires disclosure of witnesses' addresses. That rule provides:

> "No later than 10 days after the arraignment in Superior Court, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within his possession or control:
>
> "(1) The names and addresses of all persons whom the prosecutor will call as witnesses in the case-in-chief together with their relevant written or recorded statements;"

Ariz.R.Crim.P. 15.1(a)(1). Rule 15.5, however, creates exceptions. That rule provides in relevant part:

> "Upon motion of any party showing good cause the court may at any time order that disclosure of the identity of any witnesses be deferred for any reasonable period of time not to extend beyond 5 days prior to the date set for trial, or that any other disclosures required by this rule be denied, deferred or regulated when it finds:
>
> "(1) That the disclosure would result in a risk or harm outweighing any usefulness of the disclosure to any party; and
>
> "(2) That the risk cannot be eliminated by a less substantial restriction of discovery rights."

Ariz.R.Crim.P. 15.5(a). The language of Rule 15.5(a) indicates that the rule requires a balancing of risk or harm, against the usefulness of disclosure. The rule also requires that the manner of regulation of disclosure be no more restrictive of discovery rights than necessary.

The comment to Rule 15.5(a) indicates that a trial judge has broad discretion to regulate discovery when a risk of harm is shown:

"The court is given broad discretion to limit discovery required by this rule whenever it is shown a risk of harm resulting from a specific disclosure. Such risks could include the potential for physical harm, intimidation, bribery, economic reprisals, harassment of a witness, extreme prejudice to a witness or party, or interference with or disruption of ongoing police investigations."

Ariz.R.Crim.P. 15.5(a) comment. Consequently, we will not disturb a trial court's decision to regulate disclosure unless the court clearly abuses its discretion in finding that the risk of disclosure outweighs its usefulness, or in selecting a manner of regulation. *Cf. State v. Piper,* 113 Ariz. 390, 555 P.2d 636 (1976) (trial court ruling under Rule 15.1(e) will not be disturbed absent abuse of discretion); *State v. Kevil,* 111 Ariz. 240, 527 P.2d 285 (1974).

■ Turning to the instant case, we recognize that the prosecutor did not follow the procedure preferred under Rule 15. He should not have excised the addresses from the Rule 15.1 disclosure without first obtaining a protective order under Rule 15.-5 Ariz.R.Crim.P. 15 comment. The failure of the prosecutor to follow this preferred procedure, however, does not deprive the trial court of the power to subsequently enter a Rule 15.5 order regulating discovery if the court finds the circumstances of the case warrant it. In the case at issue we find that the trial court did not abuse its discretion in so finding. Nor did the court abuse its discretion in the manner of regulation selected.

■ At the hearing on the two motions the evidence indicated that the five witnesses whose names were withheld all expressed fear at having to testify against appellant and requested that their addresses be withheld. The evidence also indicated that appellant was a member of a motorcycle club, that the witnesses feared reprisals from either appellant or other club members, and that one of the witnesses had already been kidnapped at gunpoint by members of the club in connection with a different matter. Furthermore, after appellant's arrest he stated that he was waiting to die but was "going to try and take a couple of 'em with me first." Based on this evidence the court was justified in finding that there was some risk of harm, intimidation, or harassment of the witnesses.

Balanced against this risk is the fact that the addresses might have been useful in investigating the witnesses and perhaps developing impeachment material. Defense counsel offered nothing more specific as to why the addresses were useful. Under these circumstances we cannot say that the trial court abused its discretion in deciding that the risk of harm, when balanced against the usefulness of disclosure, justified regulating disclosure.

We also find that the trial court acted well within its discretion in selecting a manner of regulating disclosure. In general, the withholding of addresses of witnesses is a relatively minor restriction of disclosure rights. This applies with particular force to the instant case. Though he denied appellant's request for disclosure, the trial judge ordered the prosecutor to make the witnesses available for interviews at defense counsel's convenience. The court also advised defense counsel that if, after the interviews, he felt the witnesses were not genuinely afraid or that he still needed their addresses, he could renew his motion and the court would reconsider it. Furthermore, during the trial, at defense counsel's request, the court made two witnesses remain in Tucson while the defense investigated them and decided whether to recall them. In short, the trial court made every effort to insure that the defense had adequate access to and ability to investigate the witnesses in spite of the fact that the addresses were withheld. He also left open the possibility of disclosure of the addresses if defense counsel found them to be important. Under these circumstances, the withholding of the addresses was no greater restriction of discovery rights than the situation called for.

## SHACKLES

The morning before jury selection in the instant case appellant objected to the fact

that he was going to be ankle-shackled during his trial. The trial judge responded that he was not going to tell the jail personnel not to shackle appellant but that he would tell them to be sure the jury did not see the shackles. To ensure that the jury did not see the ankle shackles, appellant was moved away from the jury box to what would normally be the state's table. In that position appellant's table, which has a solid front, was facing the jury box. Furthermore, care was taken in transporting appellant to and from the courtroom, and while the jury was in the courtroom to prevent the jury from seeing the shackles. Appellant claims that in spite of these precautions at least part of the jury saw appellant in wrist and ankle shackles during the trial. Consequently, he argues, he was denied a fair trial.

An appellate court will not find error on the ground that the defendant was shackled unless it is shown that the jury saw the shackles. *State v. Clark*, 340 So.2d 208 (La.1976), *cert. denied*, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977); *State v. Beal*, 470 S.W.2d 509 (Mo.1971); *State v. Johnston*, 98 N.M. 92, 645 P.2d 448 (App. 1982); *State v. Foster*, 83 N.M. 128, 489 P.2d 408 (App.1971); *cf. Scott v. State*, 88 Nev. 682, 504 P.2d 10 (1972); *Davis v. State*, 505 S.W.2d 800 (Tex.Cr.App.1974). In the instant case precautions were taken to ensure that the jury did not see the shackles on appellant. The only evidence indicating that the jury saw the shackles is the affidavit of an attorney stating that at some unspecified time he spoke with members of the jury who reported that at some unspecified time some members of the jury saw appellant in shackles.

It is well settled that affidavits of third parties as to unsworn statements of jurors are not competent evidence of juror misconduct. *State v. Marvin*, 124 Ariz. 555, 606 P.2d 406 (1980); *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978); *State v. Cookus*, 115 Ariz. 99, 563 P.2d 898 (1977); *State v. Kidwell*, 106 Ariz. 257, 475 P.2d 241 (1970). The reasoning behind this rule applies with equal force to third party affidavits as to unsworn statements of jurors offered to prove what members of the jury saw or did not see. "Any other rule might require that an appellate court set aside a jury's verdict and the judgment based on it without establishing for certain whether the incident did or did not occur * * *." *State v. Pearson*, 98 Ariz. 133, 137, 402 P.2d 557, 560 (1965). There is, therefore, no competent evidence before this court indicating that any juror saw appellant in shackles. Consequently, we find no error.

## VOIR DIRE

Appellant and the state requested the court to ask the venire a number of voir dire questions. Appellant's requested voir dire question number 19 stated:

"Would you be able objectively and fairly to evaluate psychiatric testimony to the effect that a person's insanity could render him not legally responsible for taking the life of others."

The trial judge refused to ask the question stating that, in the form requested, it amounted to argument. Appellant claims error. He attempts to characterize the refusal to ask question 19 as a refusal to voir dire the prospective jurors about their feelings toward the insanity defense. Consequently, he would have this court rule on the question of whether a trial court may prohibit or refuse voir dire questions concerning the insanity defense. We find, however, that that question is not presented by the record before this Court. Furthermore, we find no error in the refusal of question 19.

An examination of appellant's requested question number 19 indicates that it is ambiguous at best. Even if we assume that it unambiguously raises the issue of the juror's feelings about the insanity defense, the court's refusal to ask it is not tantamount to refusal to voir dire on the insanity defense. The trial judge refused to ask the question not because it involved the insanity defense, but because he found that in the form requested, it amounted to argument. Nowhere in the record before us does the trial judge refuse to voir dire

about the insanity defense. Furthermore, the court allowed the prosecutor and defense counsel to ask questions of the prospective jurors. Nowhere in the record does the trial court tell defense counsel not to ask questions about the insanity defense. Based on the record before us, it appears defense counsel was free to question the prospective jurors about their feelings toward the insanity defense. Consequently, the record does not raise the issue of whether a trial court may refuse or prohibit voir dire on the insanity defense. *See State v. Skaggs,* 120 Ariz. 467, 586 P.2d 1279 (1978). We do not suggest that counsel was required to ask requested question 19 in order to preserve the issue for appeal. We merely recognize that where a trial court neither refuses to question prospective jurors about the insanity defense, nor prohibits defense counsel from doing so, the issue has not been preserved for purposes of appeal.

■ Furthermore, we find no error in the refusal of question 19. In conducting voir dire, the trial court is required to ask prospective jurors any question it deems necessary to determine their qualifications and to enable the parties to intelligently exercise their peremptory challenges and challenges for cause. *State v. Melendez,* 121 Ariz. 1, 588 P.2d 294 (1978). It is not a legitimate function of voir dire to condition the jury to the receipt of certain evidence or to a particular view of the evidence. *State v. Schad,* 129 Ariz. 557, 633 P.2d 366 (1981); *State v. Melendez, supra.* The scope of voir dire is left to the sound discretion of the trial court and error will not be found unless the court abused its discretion. *State v. Melendez, supra; State v. Smith,* 114 Ariz. 415, 561 P.2d 739 (1977).

■ Appellant's requested question 19 appears to be designed to condition the jurors to the receipt of psychiatric testimony to the effect that appellant was insane at the time of the killings and therefore not legally responsible. As such, the trial court did not abuse its discretion in refusing the question on the ground that it amounted to argument.

### TESTIMONY OF HYPNOTIZED WITNESS

Gene Taylor, the victim who survived the shooting on August 10, 1979, was interviewed by a detective from the Pima County Sheriff's Office on August 14, 1979 and gave a taped statement. The following day Taylor was hypnotized by a doctor working for the Sheriff's office and gave a statement while under hypnosis. Relying on *State v. Mena,* 128 Ariz. 226, 624 P.2d 1274 (1981), appellant filed a motion seeking to preclude Taylor from testifying at trial on the grounds that Taylor was incompetent to testify because he had been hypnotized. The trial court denied the motion but ruled that Taylor could only testify to matters contained in his pre-hypnotic statement. Appellant now claims that it was error to have allowed Taylor to testify at all. We find that it was not error.

■ On rehearing in *State ex rel. Collins v. Superior Court,* 132 Ariz. 180, 644 P.2d 1266 (1982), this court addressed the question of whether a witness who has been hypnotized is incompetent to testify concerning matters demonstrably recalled prior to hypnosis. A reading of the four opinions filed following rehearing indicates that a majority of this Court is convinced that witnesses are not incompetent to testify with regard to matters they were able to recall and relate prior to being hypnotized. *Id.* at 209, 644 P.2d at 1295 (Feldman, J., opinion of the court); *Id.* at 211, 644 P.2d at 1297 (Hays, J. concurring in part and dissenting in part); *Id.* at 213, 644 P.2d at 1299 (Holohan, C.J., concurring in part and dissenting in part). Consequently, that is the rule that must be applied in the instant case.

■ The trial court's order in the instant case conforms to the rule in *Collins* to the letter. The court limited Taylor's testimony to matters recalled prior to hypnosis and related in his pre-hypnotic statement. Moreover, the record reveals that the prosecutor abided by the Court's ruling. Comparing Taylor's pre-hypnotic statement to his testimony at appellant's trial, it is clear

that Taylor's testimony covers only those matters contained in the pre-hypnotic statement. Consequently, the admission of Taylor's testimony was not error.

## PSYCHIATRIC TESTIMONY

At his trial appellant called a psychiatrist to testify in support of his insanity defense. The doctor testified that appellant was in a dissociative state at the time of the killings and, therefore, did not know the nature or quality of his actions or that they were wrong. He further testified that the circumstances surrounding the shooting indicate that at the time of the shooting appellant was "on automatic pilot," that "[h]e had no real awareness of what was going on," that he blocked out reality and "just went through some very automatic movements," that the shooting "was not a conscious activity on his part," and that during the incident appellant felt stressed, threatened, frightened, and as though his masculinity had been attacked.

In rebuttal the state called a psychiatrist in order to prove that appellant was sane at the time of the shooting. The doctor testified that when appellant shot the victims he did know the nature and quality of his actions and that they were wrong. He also testified that appellant was not in a dissociative state. In support of this opinion he stated that the circumstances of the shooting indicate a conscious motive for the killing, and that appellant's actions appeared to be more purposeful than the actions of a person in a dissociative state. Appellant now argues, somewhat inconsistently, that a defense expert may, in support of an opinion concerning sanity, testify as to a defendant's state of mind at the time of the crime, but that the state's expert may not. This argument is without merit.

■ In cases not involving an insanity defense, a psychiatric expert witness ordinarily may not give an opinion concerning the defendant's state of mind at the time of the crime. *See State v. Christensen,* 129 Ariz. 32, 628 P.2d 580 (1981) (expert may not testify that defendant was not acting reflectively at the time of the crime); *State*

*v. Laffoon,* 125 Ariz. 484, 610 P.2d 1045 (1980) (expert may not testify that at the time of the crime defendant lacked ability to form specific intent); *State v. Dickey,* 125 Ariz. 163, 608 P.2d 302 (1980) (expert may not testify that defendant was not thinking reflectively at time of crime); *see also, Bradshaw v. State,* 353 So.2d 188 (Fla. App.1978); *Simpson v. State,* 269 Ind. 495, 381 N.E.2d 1229 (1978); *State v. Foy,* 224 Kan. 558, 582 P.2d 281 (1978). In cases involving an insanity defense, however, expert testimony concerning the defendant's state of mind at the time of the crime is proper. *See Tremain v. State,* 336 So.2d 705 (Fla.App.1976); *McKee v. State,* 372 P.2d 243 (Okla.Cr.App.1962); *Smith v. State,* 564 P.2d 1194 (Wyo.1977); *cf. Bradshaw v. State, supra,* (such testimony improper absent plea of insanity); *Simpson v. State, supra,* (such testimony, not related to issue of insanity, is improper); *State v. Foy, supra* (such testimony improper once question of insanity is withdrawn). Indeed, it is difficult to imagine how a defendant could place his or her sanity in issue, or how the state could prove the defendant sane, without expert testimony as to the defendant's state of mind at the time of the crime. We find nothing improper in the expert testimony in the instant case.

## JURY INSTRUCTIONS

■ At appellant's trial, evidence of other bad acts on his part was properly admitted. Defendant requested a jury instruction to the effect that he was not on trial for any act not alleged in the indictment. This instruction was refused. Appellant now claims that it was error to refuse the instruction because without it the jury may have convicted him of crimes not charged in the indictment. This claim is without merit.

The trial judge told the jury precisely what offenses appellant was charged with and what the elements of those offenses are. Furthermore, the trial judge told the jury how it was to consider the evidence of other bad acts on appellant's part. The jury was instructed as follows:

"Evidence of other bad acts of the defendant have been admitted into evidence in this case, such evidence is not to be considered by you to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be considered by you on the issue of defendant's sanity or intent, preparation, knowledge, identity or absence of mistake or accident."

This instruction was sufficient to allay any fear that the other bad act evidence would be considered for any improper purpose. There is simply nothing in the record to suggest that appellant was convicted of crimes not charged in the indictment.

## IMPOSITION OF THE DEATH PENALTY

In reviewing imposition of the death penalty it is our duty to review the record and make a separate independent determination as to whether the death penalty is appropriate. *State v. Zaragoza,* 135 Ariz. 63, 659 P.2d 22 (1983); *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1 (1983).

In the instant case the trial court found one aggravating circumstance and no mitigating circumstances. The court found under A.R.S. § 13–703(F)(3), that in committing these murders appellant knowingly created a grave risk of death to persons other than the victims. We agree. The evidence at the trial established that the Ranch House Bar was crowded the night of the killings and that there were from five to nine other people in the immediate area of the victims when they were shot. When he emptied his gun at the victims, appellant created a grave risk of death to those other people. *State v. Blazak,* 131 Ariz. 598, 643 P.2d 694 (1982); *State v. Doss,* 116 Ariz. 156, 568 P.2d 1054 (1977).

Turning to the issue of mitigating circumstances, the trial court found none. We find, however, that there is a possibility that the trial judge reached this conclusion without fully considering the mitigating evidence offered by appellant. Consequently, the case is remanded for resentencing.

At appellant's sentencing hearing appellant presented psychiatric testimony in an effort to establish as a mitigating circumstance, that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired at the time of the killings. *See* A.R.S. § 13–703(G)(1). The trial court found that this mitigating circumstance did not exist. In so finding, the court made the following statement:

"When you look at the mitigation in this case, really the only serious argument I have considered is your age, thirty years old. I think you are beyond the point where your age can be considered as a mitigating circumstance. Your lawyer has argued that your mitigating circumstances in this case was your mental condition, you see.

\* \* \* \* \* \*

" \* \* \* I have listened to Dr. LaWall and granted, that Dr. LaWall maybe, you know, you have to take his testimony and analyze it. But Dr. LaWall's testimony was that you don't suffer from anything but an antisocial, when you get right down to it, you have to analyze that you're antisocial. You are a pretty mean sort of guy, you are dangerous.

"Dr. Santiago, who is chief of psychiatry and chief of staff, I think, at Kino Hospital, came in on the 21st, as your witness in mitigation. Dr. Santiago says you suffer from depression and that you suffer from an antisocial personality. He said you are not insane. He says these are character defects. And the case law in the State of Arizona says that these type of defects aren't such matters that can be held in mitigation."

It is well settled that when a defendant is being sentenced for first degree murder the sentencer must consider, as a mitigating circumstance, any aspect of the defendant's character or record and any circumstance of the offense relevant in determining whether a sentence less severe than death is appropriate. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *State v. Zaragoza,* 135 Ariz. 63, 659

P.2d 22 (1983); *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). Likewise, the sentencer may not refuse to consider, as a matter of law, relevant evidence presented in mitigation. *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The reason for this requirement is to ensure that the death penalty is not imposed in spite of factors that may call for a less severe penalty. *Lockett v. Ohio, supra.*

In *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), this Court found that a character or personality disorder does not qualify as an impairment within the meaning of A.R.S. § 13–454(F)(1), currently A.R.S. § 13–703(G)(1). In *State v. Vickers,* 129 Ariz. 506, 633 P.2d 315 (1981), the Court explained how a sentencing judge is to consider evidence offered to establish the mitigating circumstance in § 13–703(G)(1) in order to comply with *State v. Richmond, supra,* as well as *Lockett v. Ohio, supra,* and *State v. Watson, supra.* If after considering the offered evidence, the court concludes that, with respect to the defendant's mental condition, it merely establishes a character or personality disorder then the court may, under *Richmond,* conclude that the mitigating circumstance in § 13–703(G)(1) does not exist. In order to remain faithful to *Lockett* and *Watson,* however, the court's inquiry may not end there. The court must consider the offered evidence further to determine whether it in some other way suggests that the defendant should be treated with leniency. For example, a defendant may offer evidence of several factors including a difficult family history in an effort to establish the mitigating circumstance in § 13–703(G)(1). The court may not refuse to consider the independent mitigating effect, if any, of the family history merely because all the factors taken together fail to establish the mitigating circumstance in § 13–703(G)(1). The trial court is not required to find a mitigating circumstance; nor is it required to make a statement that none has been found. The trial court must, however, consider the evidence. *State v. Vickers, supra.*

In the instant case there is some indication that the trial court did not follow this approach. The court did consider the evidence offered by appellant sufficiently to conclude that with respect to appellant's mental state, it merely established that appellant suffers from a character defect. The judge's statement, however, suggests that he may have ended his inquiry there. It suggests that he did not consider the offered evidence further to determine whether it in some other way suggested that appellant should be shown leniency. There is, therefore, a risk that appellant was sentenced to death without full consideration of the evidence offered in mitigation. Consequently, we remand the case for resentencing.

We have examined the record for fundamental error as required by A.R.S. § 13–4035 and find none. The judgments of conviction for first degree murder and attempted first degree murder are affirmed. The sentence in connection with attempted first degree murder is affirmed and the case is remanded for resentencing in connection with the first degree murder convictions.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.