690 P.2d 94

The STATE of Arizona, Petitioner,

v.

The SUPERIOR COURT of the state of Arizona, In and For the COUNTY OF PIMA, and the Honorable William Scholl, Judge Pro Tempore of the Superior Court, Respondent,

and

Judge J. GEIST, Real Party in Interest.

No. 2 CA–SA 088.

Court of Appeals of Arizona, Division 2.

July 18, 1984.

Review Denied Nov. 6, 1984.

Stephen D. Neely, Pima County Atty. by William F. Mills, Tucson, for petitioner.

Frederic J. Dardis, Pima County Public Defender by Jeffrey Schwartz, Tucson, for real party in interest.

## OPINION

HATHAWAY, Judge.

The state has brought this special action from the trial court's denial of its motion to preclude post-hypnotic testimony by the real party in interest, an order precluding any testimony with regard to hypnosis, and the denial of the state's request for a continuance of the trial to allow for an interview of the hypnotist involved. Additionally, the state also seeks special action relief from an order issued by the respondent court suppressing the real party in interest's medical records, including a blood alcohol analysis, and precluding testimony by the real party in interest's physicians. Petitioner is without an adequate remedy by means of an appeal, and because we believe the trial court abused its discretion in entering the order related to the post-hypnotic testimony, we assume jurisdiction and grant relief.

The real party in interest is the defendant in Pima County Superior Court cause number CR-11764, and is charged by indictment with the crimes of manslaughter and aggravated assault stemming from an automobile accident on May 21, 1983.

At the hearing on the state's motion to preclude the real party in interest's testimony, the accident investigator for the Department of Public Safety testified that on two occasions the real party in interest admitted he was the driver of the vehicle at the time of the accident and that no one else ever drove his car. However, the investigator with the Pima County Public Defender's office testified at the hearing that the real party in interest was unclear about whether he was actually driving the vehicle at the time of the accident and thought he might have been curled up asleep in the backseat. The investigator testified that he took the real party in

interest to a Dr. Gurgevich to be hypnotized and it was the investigator's conclusion that the hypnosis was inconclusive. Following this hearing, the court ruled that the real party in interest could testify at trial without any limits as to the testimony and that testimony with regard to his being hypnotized was irrelevant and was to be precluded. Additionally, the court denied the state's motion for a continuance so it could have time to interview the hypnotist, the court finding that since any testimony the hypnotist would give would be irrelevant, the hypnotist would be precluded from testifying and continuance would be unnecessary. We stayed the superior court proceedings pending resolution of this special action, and the hypnotist was subsequently interviewed by the prosecutor. The hypnotist confirmed that the real party in interest had been seen for one session prior to hypnosis and was asked who had been driving the vehicle and apparently recounted in detail that he remembered pulling the vehicle over to the side of the road and getting into the backseat. The hypnotist concluded that hypnosis had no positive effect on the real party in interest and that he had remembered no events other than those he had already mentioned prior to hypnosis.

Current Arizona law in regard to post-hypnotic testimony is contained in the two opinions of *State ex rel. Collins v. Superior Court*, 132 Ariz. 180, 644 P.2d 1266 (1982) (Collins I), and the supplemental opinion of the same case (Collins II). In *Collins* I our supreme court held in a 3–2 decision that a victim's post-hypnotic testimony is inherently unreliable and per se inadmissible. However, in the supplemental opinion, *Collins* II, the court relaxed the rule of absolute preclusion of a hypnotized witness' testimony to allow a previously hypnotized witness to testify to the extent of his pre-hypnotic recall, provided that the pre-hypnotic recall had been appropriately recorded before hypnosis and hypnosis procedures were performed in a manner to minimize the danger of contamination. The court stated:

"[W]e modify our previous decision and hold that a witness will not be rendered incompetent merely because he or she was hypnotized during the investigatory phase of the case. That witness will be permitted to testify with regard to those matters which he or she was able to recall *and* relate prior to hypnosis." 132 Ariz. at 209, 644 P.2d 1266. (Emphasis in original)

The court also expressed approval of the safeguards adopted by the New Jersey court in *State v. Hurd*, 86 N.J. 525, 432 A.2d 86 (1981). Our supreme court stated:

"... Some of the attendant risks may be minimized by allowing cross-examination ·of the previously hypnotized witness in order to permit the opposing party to establish the fact of hypnosis and to introduce expert evidence showing the inherent possibility that the witness might have become subjectively certain of events only tentatively recalled before hypnosis.

We further minimize the risk by requiring that before hypnotizing a potential witness for investigatory purposes, the party intending to offer the prehypnotic recall appropriately recorded and written, tape recorded or, preferably, videotaped form the substance of the witness' knowledge and recollection about the evidence in question so that the prehypnotic recall may be established. Such recordation must be preserved so that at trial the testimony of that witness can be limited to the prehypnotic recall. If such steps are not taken, admission of the prehypnotic recall will be error, which, if prejudicial, will require reversal.

Further, parties intending to use hypnosis for investigatory purposes should make sure that the hypnosis procedure is performed in a manner designed to minimize the danger of contamination of both prehypnotic and posthypnotic recall. A record of that procedure should be made and retained.... Any litigant intending to offer testimony of a witness who has been hypnotized must make timely disclosure of such information to the court and to opposing counsel." 132 Ariz. at 210, 644 P.2d 1266.

There is no argument from the real party in interest that the safeguards as enumerated in *State v. Hurd*, supra, and adopted by our supreme court in *Collins* II, were followed or that disclosure of the hypnosis was properly made. However, we are faced with the dilemma of allowing a defendant to testify after undergoing hypnosis in complete disregard of our supreme court's mandate in *Collins* II, on the one hand, and precluding a defendant from testifying on his own behalf, on the other. We believe that, under the facts of this case the right of the real party in interest to testify must prevail and that the respondent court acted properly in allowing the testimony.

■ Although the right of an accused to testify is not specifically expressed in the Constitution or Bill of Rights, it has been referred to by the United States Supreme Court. *See Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Various federal appellate courts have also alluded to such a right. *See Alicea v. Gagnon*, 675 F.2d 913 (7th Cir. 1982); *U.S. ex rel. Wilcox v. Johnson*, 555 F.2d 115 (3rd Cir.1977); *U.S. v. Bentvena*, 319 F.2d 916 (2nd Cir.1963), cert. den. 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271. The right to testify on one's behalf is also derived from the compulsory process clause of the Sixth Amendment. That amendment includes an accused's right to call "witnesses in his favor." Obviously, the accused's right to testify himself would be included therein. We have no difficulty in concluding that the right granted an accused to be present and to be heard in person at his criminal trial may not be denied without violating the accused's Fifth and Sixth Amendment rights. Also, Arizona has adopted A.R.S. § 13–117, which allows a defendant to be a witness in his own behalf. However, even though the real party in interest had a statutory and constitution-

al right to testify on his own behalf, that does not mean that such a right is without limit. A.R.S. § 13–117 goes on to say that if a defendant does offer himself as a witness in his own behalf, he can be cross-examined to the same extent and is subject to the same rules as any other witness.

 The Second Circuit Court of Appeals has held: "... that a criminal defendant's right to present a full defense and to receive a fair trial does not entitle him to place before the jury evidence normally inadmissible." *U.S. v. Bifield*, 702 F.2d 342, 350 (2nd Cir.1983). However, *Bifield* was not a case where a criminal defendant was refused an opportunity to testify in his own defense. The defendant tendered a duress defense and only the testimony regarding that defense was excluded because the court ruled that it was insufficient as a matter of law to go to the jury. Forbidding the real party in interest from testifying in the instant case would keep from the trier of fact his explanation of the accident—his only defense. In view of the posture of this case, we conclude that the trial court did not abuse its discretion in allowing the real party in interest to testify.

Nor do we believe that our holding in this case is inconsistent with the decision in *Collins* II or its underlying rationale. *Collins* II and the cases it discusses are concerned with the effect of hypnosis on the search for truth where the future of a criminal defendant is in the balance. The danger of convicting a defendant with unreliable, hypnotically-recalled testimony is the basis for the safeguards mandated by *Collins* II. Here, a defendant is not at risk with the possibility of tainted post-hypnotic recall testimony to be given by a third party. The real party in interest had a pre-hypnosis interview in which he told the hypnotist that he was not the driver of the vehicle. The hypnotist concluded that the real party in interest was not able to recall

any details of the accident as a result of the hypnosis and that hypnosis had no positive effect on him. While such a statement of the hypnotist does not comply with the requirement of *Collins* II that the pre-hypnosis statements be recorded, it does present the trial court with circumstances less fraught with danger than *Collins* II. Where there is some record, albeit unrecorded, of a defendant's pre-hypnosis statements and the hypnosis did not change the defendant's recall as to his prior statements, we find the scales tip in favor of allowing such a defendant to exercise his right to testify rather than forbidding him to do so merely because he may have failed to follow procedural guidelines established by case law.[1]

Our conclusion that the trial court did not err in denying petitioner's motion to preclude the pre-hypnotic testimony does not mean that the denial of the concomitant motion to cross-examine in regard to the effects of hypnosis was similarly correct. As noted above, the supreme court in *Collins* II, the supreme court found that many of the risks involved in allowing post-hypnotic recall testimony would be

"... minimized by allowing cross-examination of the previously hypnotized witness in order to permit the opposing party to establish the fact of hypnosis and introduce expert evidence showing the inherent possibility that the witness might have become subjectively certain of events only tentatively recalled before hypnosis." 132 Ariz. at 210, 644 P.2d 1266.

Such reasoning applies to the testimony of a defendant, perhaps even more so, since the credibility of the real party in interest is actually the sole issue in the case. Background information concerning hypnosis—its uses, effects, techniques and general reliability—has generally been held to be admissible. *People v. Modesto*, 59 Cal.2d

---

1. We would also note that the lack of compliance with the safeguards of *Collins* II was neither the fault of the real party in interest nor defense counsel, but apparently resulted when a defense investigator, desiring to aid the real party in interest in his recollection of the events of the accident, took him directly to the hypnotist without first informing defense counsel.

722, 31 Cal.Rptr. 225, 382 P.2d 33 (1963), overruled on other grounds in *People v. Sedeno*, 10 Cal.3d 703, 112 Cal.Rptr. 1, 518 P.2d 913 (1974); *People v. Marsh*, 170 Cal. App.2d 284, 338 P.2d 495 (1959); *State v. Donovan*, 128 Iowa 44, 102 N.W. 791 (1905); *Harding v. State*, 5 Md.App. 230, 246 A.2d 302 (1968), cert. den. 395 U.S. 949, 89 S.Ct. 2030, 23 L.Ed.2d 468 (1969). See generally, Annot., 92 A.L.R.3rd 442 (1979).

■ The state's motion to cross-examine with regard to the effects hypnosis may have had on the real party in interest should have been granted. The attendant motion for a continuance has apparently been mooted by the delay generated by seeking special action relief, and we therefore need not address the state's contentions in that regard.

■ As to the state's other argument, that the trial court erred in precluding it from presenting the real party in interest's medical records, including a blood alcohol analysis, we see no abuse of the court's discretion. The real party in interest executed an authorization to release his medical record to the department of public safety. The court found that this alleged authorization was not a valid waiver of the patient-physician privilege, since the authorization to release medical information presented to the real party in interest directed his attention to the fact that the information was for the use of the DPS only and that he was not advised that it would be used in any type of criminal proceeding. We cannot say that the respondent court abused its discretion in finding that the record's admission was not waived and the state was rightfully precluded by the physician-patient privilege from admitting the records into evidence or from obtaining any testimony from doctors who treated the real party in interest for purposes of diagnosis and treatment.

BIRDSALL, C.J., and HOWARD, J., concur.