887 P.2d 538

The STATE of Arizona, Appellant,

v.

Jaime LOPEZ, Appellee.

No. CR–94–0191–PR.

Supreme Court of Arizona,
En Banc.

Dec. 29, 1994.

Rehearing Denied Feb. 22, 1995.

Stephen D. Neely, Pima County Atty. by Christina M. Cabanillas, Deputy County Atty., Tucson, for appellant.

Susan A. Kettlewell, Pima County Public Defender by Creighton W. Cornell, Deputy County Public Defender, Tucson, for appellee.

## OPINION

MOELLER, Vice Chief Justice.

### FACTS AND PROCEDURAL BACKGROUND

On October 25, 1980, Tucson Police Officers Holmes, DeDeyn, Duerr, and Pfeffer were monitoring a parking lot for auto burglaries when a Jeep, occupied by a driver and a passenger, pulled into the lot. The driver exited the Jeep and entered a parked car. Suspecting a burglary, the officers ran toward the car. The driver got back in the Jeep and the passenger ran away. Officers Duerr and Holmes grabbed onto the side and back of the Jeep; they sustained injuries when they were thrown off as it accelerated. Shortly after the event, Officers Holmes, DeDeyn, and Pfeffer gave tape-recorded statements. Officers Pfeffer and DeDeyn also filed police reports. Two days later, Officers Holmes, Duerr, and Pfeffer were hypnotized by two dentists. Based on the written reports, tape recordings, and descriptions of the suspect during hypnosis, the police department prepared a composite description of the suspect.

Jaime Lopez, the defendant, was indicted two months later on burglary and aggravated assault charges relating to this incident, and a warrant was issued for his arrest. He was not, however, arrested until May 1991, more than a decade after the incident. He moved to suppress all testimony of the hypnotized witnesses after the prosecution disclosed that one of the dentists who conducted the hypnosis was deceased, the other did not recall the hypnosis sessions, and no one had any notes or tapes of the sessions.

The trial court, in granting the motion to suppress, relied on *State v. Mena*, 128 Ariz. 226, 624 P.2d 1274 (1981), and the original opinion in *State ex rel. Collins v. Superior Court*, 132 Ariz. 180, 644 P.2d 1266 (1982) (*Collins I*). In February 1981, the *Mena* case prohibited "testimony from witnesses who have been questioned under hypnosis ... from the time of the hypnotic session forward," 128 Ariz. at 232, 624 P.2d at 1280, but left open the possibility of preserving the witnesses' pre-hypnotic testimony. *Id.* at

232 n. 1, 624 P.2d at 1280 n. 1. In January 1982, *Collins I* held "that any person hypnotized post-*Mena* is incompetent to testify. Any person hypnotized pre-*Mena* but who testified post-*Mena* or who has not yet testified is incompetent to testify." 132 Ariz. at 190, 644 P.2d at 1276. Because the witnesses in this case were hypnotized in 1980, pre-*Mena*, but were to testify post-*Mena*, the trial court concluded that *Mena* and *Collins I* precluded their testimony.

Following a dismissal without prejudice, the state appealed. The court of appeals first held that *Collins I* was impliedly modified by the supplemental opinion, *Collins II*, 132 Ariz. at 193, 644 P.2d at 1279, which held that not *all* testimony offered by a previously hypnotized witness is per se inadmissible. We agree with that ruling and denied review on that point.

However, the court of appeals also held that hypnotic safeguards such as those described in *Collins II* were not a foundational requirement in admitting the subsequent testimony, at least for cases arising before *Collins II*. The court relied on our post-*Collins II* cases of *State ex rel. Neely v. Sherrill*, 165 Ariz. 508, 799 P.2d 849 (1990), and *State v. McMurtrey*, 136 Ariz. 93, 664 P.2d 637, *cert. denied*, 464 U.S. 858, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983), where we discussed testimony offered by previously hypnotized witnesses, but did not mention safeguards. Under the rationale used by the court of appeals, if matters were recalled and recorded before hypnosis, testimony concerning those matters is admissible regardless of what occurred during the hypnotic session. Believing that the court of appeals may have misinterpreted *Collins II* and our subsequent case law, we granted review.

### ISSUE

Did the court of appeals err by holding that no forensic hypnosis guidelines need be followed to admit testimony relating to matters demonstrably recalled before hypnosis?

### DISCUSSION

Hypnotic testimony has been the subject of review by this court a number of times during the past several years. *See Neely,* 165 Ariz. at 508, 799 P.2d at 849; *State v. Poland,* 144 Ariz. 388, 698 P.2d 183 (1985), *aff'd,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986); *McMurtrey,* 136 Ariz. at 93, 664 P.2d at 637; *Lemieux v. Superior Court,* 132 Ariz. 214, 644 P.2d 1300 (1982); *Collins,* 132 Ariz. at 180, 644 P.2d at 1266; *State v. Stolp,* 133 Ariz. 213, 650 P.2d 1195 (1982); *Mena,* 128 Ariz. at 226, 624 P.2d at 1274; *State v. La Mountain,* 125 Ariz. 547, 611 P.2d 551 (1980). We have consistently precluded the use of testimony recalled through hypnosis, *see, e.g., Neely,* 165 Ariz. at 513, 799 P.2d at 854; *La Mountain,* 125 Ariz. at 551, 611 P.2d at 555, recognizing that "the use of hypnosis to aid in accurate memory recall is not yet generally accepted." *Mena,* 128 Ariz. at 231, 624 P.2d at 1279; *see also Rock v. Arkansas,* 483 U.S. 44, 59, 107 S.Ct. 2704, 2713, 97 L.Ed.2d 37 (1987) ("The most common response to hypnosis ... appears to be an increase in both correct and incorrect recollections.").

However, in *Collins II,* we held that "a witness will not be rendered incompetent merely because he or she was hypnotized during the investigatory phase of the case. That witness will be permitted to testify with regard to those matters which he or she was able to recall *and* relate prior to hypnosis." 132 Ariz. at 209, 644 P.2d at 1295. Acknowledging the risks inherent in admitting the testimony of a previously hypnotized witness, we further held that "parties intending to use hypnosis for investigatory purposes should make sure that the hypnosis procedure is performed in a manner designed to minimize the danger of contamination of both prehypnotic and posthypnotic recall. A record of that procedure should be made and retained." 132 Ariz. at 210, 644 P.2d at 1296; *see also State v. Superior Court,* 142 Ariz. 375, 376, 690 P.2d 94, 95 (App.1984) (holding that a previously hypnotized witness may testify to matters recalled and recorded before hypnosis, provided that the hypnosis was conducted in a manner to minimize the danger of contamination).

Although we refused to require specific safeguards, we suggested that "some, if not all of the Orne standards" be used. *Collins II,* 132 Ariz. at 210, 644 P.2d at 1296; *see*

also *Armstrong v. Young*, 34 F.3d 421, 429 (7th Cir.1994) (declining to adopt specific guidelines). The standards proposed by Dr. Martin T. Orne include: (1) hypnosis must be conducted by psychiatrist or psychologist experienced in the use of hypnosis; (2) professional conducting session must be independent from the litigants; (3) information given to hypnotist by litigants before hypnosis must be recorded; (4) before hypnosis, the hypnotist should obtain a detailed description of the facts from the subject; (5) all interactions between hypnotist and subject must be recorded; and (6) no other person should be present during the interactions. *Collins II*, 132 Ariz. at 203, 644 P.2d at 1289 (citing *State v. Hurd*, 86 N.J. 525, 432 A.2d 86, 95–97 (1981)); *see also White v. Ieyoub*, 25 F.3d 245, 249 (5th Cir.1994) (detailing same standards); *Biskup v. McCaughtry*, 20 F.3d 245, 254 (7th Cir.1994) (same); Martin T. Orne, *The Use and Misuse of Hypnosis in Court*, 27 Int'l J. Clinical & Experimental Hypnosis 311 (1979) (article proposing standards).

Subsequent to *Collins II*, the court of appeals correctly explained our rationale: "The danger of convicting a defendant with unreliable, hypnotically-recalled testimony is the basis for the safeguards mandated by *Collins II*." *State v. Superior Court*, 142 Ariz. at 378, 690 P.2d at 97. The United States Supreme Court has also endorsed state establishment of safeguards, noting: "The State would be well within its powers if it established guidelines to aid trial courts in the evaluation of posthypnosis testimony...." *Rock*, 483 U.S. at 61, 107 S.Ct. at 2714. In *Neely* we affirmed the "bright-line rule" of *Collins II* that "post-hypnotic recall is inadmissible, but pre-hypnotic recall is admissible provided that it has been recorded prior to hypnosis." 165 Ariz. at 511, 799 P.2d at 852. We explained, "This ruling was intended to protect against possibly tainted testimony, while preserving the use of hypnosis as an investigative tool." *Id.*

However, the court of appeals in this case thought that because we did not mention hypnosis standards in *McMurtrey*, 136 Ariz. at 99, 664 P.2d at 643, and *Neely*, 165 Ariz. at 511, 799 P.2d at 852, the safeguards described in *Collins II* are not a foundational requirement. *State v. Lopez*, 180 Ariz. 209, 212, 883 P.2d 446, 449 (App.1994). To the contrary, we did not mention hypnosis standards because the history and facts of those cases did not call on us to discuss the *Collins II* requirements. In *McMurtrey*, the foundational requirements of *Collins II* were not raised or discussed, most likely because the case was tried and appealed at about the same time that *Collins II* was decided. *Neely* concerned an in-court identification where the witness had not recorded any details of the defendant's identification prior to being hypnotized. 165 Ariz. at 509, 799 P.2d at 850. We did not discuss the *Collins II* foundational requirements because we did not need to get that far—there was no demonstrably recalled and recorded testimony prior to the hypnosis. Therefore, the testimony was barred regardless of the manner in which the hypnosis was conducted.

Here, however, there is demonstrably recalled pre-hypnosis evidence in the form of police reports and audio recordings made by the police officers. *See Poland*, 144 Ariz. at 401, 698 P.2d at 196 (police reports); *McMurtrey*, 136 Ariz. at 99, 664 P.2d at 643 (pre-hypnosis taped statement). Because the officers were later hypnotized, *Collins II* requires safeguards to prevent tainting the post-hypnosis testimony. 132 Ariz. at 202–07, 644 P.2d at 1288–93. Because there were no such safeguards in this case or, at least, there is no present evidence of the use of such safeguards, the post-hypnotic testimony was inadmissible. Thus, it was correctly suppressed by the trial court, albeit based on a rationale different from that which we employ.

## DISPOSITION

We vacate the court of appeals' opinion insofar as it deals with the issue of standards and safeguards as foundational requirements for use of post-hypnotic testimony. The trial court's order of suppression is affirmed.

FELDMAN, C.J., and CORCORAN, ZLAKET, and MARTONE, JJ., concur.